Michael **FRANCO**, Plaintiff, Appellee,

v.

**SELECTIVE INSURANCE COMPANY,** Defendant, Appellant.

**New Jersey Manufacturers Insurance Company, Defendant.**

No. 99–1026.

United States Court of Appeals, First Circuit.

Heard June 14, 1999.

Decided July 14, 1999.

Jon A. Haddow with whom Farrell, Rosenblatt & Russell was on brief for appellant.

Daniel R. Mawhinney with whom Michael R. Bosse and Thompson & Bowie were on brief for appellee.

Before TORRUELLA, Chief Judge, CAMPBELL, Senior Circuit Judge, and BOUDIN, Circuit Judge.

BOUDIN, Circuit Judge.

Michael Franco, the plaintiff in this case, was injured in July 1994 when he fell from a skylight while working at the Maine Mall in South Portland, Maine. After unsuccessfully pursuing a workers' compensation proceeding, he filed suit in September 1996 against, *inter alia*, "Staffco Inc."— actually two entities, Stafford Glass Co. and Staffco Greenhouses, Inc.[1]— and George Riker (a supervising employee). That suit was settled in January 1998. Franco then sued Selective Insurance Company ("Selective"), Stafford Glass' general liability insurer, giving rise to the present litigation.

Selective provided Stafford Glass Company with a general liability insurance policy, several of whose provisions are relevant here. First, the policy contained an exclusion indicating that it would not cover claims for "bodily injury" to any employee of the insured injured in the course of employment. Second, the policy required the insured to notify Selective of any occurrence that could result in a claim or of any claim or suit "as soon as practicable." Staffco Greenhouses and Riker apparently had derivative protection under the policy.

Franco's 1996 complaint alleged that he had been injured in the course of his work for "Staffco, Inc." at the Maine Mall, that the defendants had not appropriately "implement[ed] ... state and federal statutes concerning employment and safety requirements," and that they had wrongfully denied him "workers' compensation coverage and other state and federal protections arising from and involving employment." He sought relief under federal racketeering law, and for common law negligence, fraud, intentional and negligent infliction

of emotional distress, and failure to procure workers' compensation coverage.

Neither "Staffco, Inc.," Staffco Greenhouses, Stafford Glass, nor Riker filed a timely answer to the original complaint. On October 29, 1996, the district court entered a default against them. Fed. R.Civ.P. 55(a). On May 27, 1997, the defendants moved to set aside the default, but the magistrate judge denied the motion, finding both that the delay was unreasonable and that the defendants had shown no good reason for their failure to answer the complaint.

In December 1996, Franco's attorneys notified the insurance broker of their lawsuit, who in turn notified Selective on December 19, 1996. Selective did not join in the defendants' later motion to set aside the default or intervene and file its own motion. Instead, Selective filed suit in Maine state court seeking a declaratory judgment that it had no duty to defend or indemnify Stafford Glass or Staffco Greenhouses. The state court dismissed the case when the current action was brought by Franco in federal district court.

In January 1998, approximately six months after the magistrate judge's decision declining to set aside the default, Stafford Glass, Staffco Greenhouses, and Riker entered into a settlement agreement and stipulated judgment with Franco. The agreement and judgment awarded Franco $500,000, but included a promise by Franco not to seek satisfaction of the judgment from any of the defendants personally (except for $15,000 to be paid by Stafford Glass up front). Instead, it assigned to Franco any rights or claims of the defendants against Selective (and against a workers' compensation carrier who later settled with Franco).

Franco then sued Selective in federal court. The claims against Selective were

---

1. Although both companies are connected with glass construction, their relationship is unclear: we were told at oral argument that Stafford Glass spun off a part of its business, now carried on by Staffco Greenhouses, to a former employee, but there are no findings on the point.

for breach of the duty to defend and the duty to indemnify, negligent claims handling, breach of fiduciary duty, breach of the implied duty of good faith and fair dealing, late payment, and unfair claims practices. In an amendment to the complaint, Franco also added a cause of action under Maine's "reach and apply" statute, 24–A M.R.S.A. § 2904 (1990).

Selective moved for summary judgment on two grounds pertinent here: first, that Franco was an employee injured on the job, a claim specifically excluded from coverage under the insurance policy, and, second, that Selective had been prejudiced by not receiving notice of the suit until nearly two months after default had been entered. Franco cross-moved for summary judgment, on the grounds that Stafford Glass had been made liable to Franco by the earlier consent judgment and that Franco was not in fact an employee of Stafford Glass. Supporting affidavits offered by Franco showed that Stafford Glass had not worked on the Maine Mall project and that Franco was in fact employed by Staffco Greenhouses.

■ On May 12, 1998, the magistrate judge filed a decision, recommending summary judgment in favor of Franco. Under Maine law, a duty to defend exists if the allegations of the complaint suggest any legal or factual basis that would obligate the insurer under the policy at issue. *Gibson v. Farm Family Mut. Ins. Co.*, 673 A.2d 1350, 1352–53 (Me.1996). The magistrate judge found that Selective had breached this duty to defend Stafford Glass, and in failing to defend had forfeited its right to contest its duty to indemnify. The decision also rejected Selective's late-notice defense for lack of proof of prejudice.

The district court agreed that Selective was liable under the policy but on different grounds.[2] It held that the employee exclu-

sion did not protect Selective because the undisputed facts showed that Franco had not been employed by Stafford Glass; and it rejected Selective's assertion that Franco was estopped from making this showing. The court also apparently agreed that Selective had not shown prejudice from the late notice. Since Selective protected Stafford Glass under a general liability policy and no exclusion or defense existed, the court held that Selective was required to indemnify Stafford Glass for the consent judgment it had suffered—a right of indemnification that had been assigned to Franco.

Although the district court did not address the issue, the parties apparently agreed that the consent judgment reflected the proper amount of indemnification to the extent it was "reasonable" and they agreed to submit the issue of reasonableness to arbitration. Selective reserved the right to appeal only from the denial of its motion for summary judgment and the granting of summary judgment to Franco. The arbitrator awarded Franco $524,900, based on the consent judgment and attorney's fees and accumulated interest. Selective now appeals from the district court's decision holding Selective liable; the amount is not in dispute.

■ One of Selective's arguments on appeal is that Stafford breached the notice provision in its insurance policy by not informing Selective of the suit brought by Franco. Under Maine law, a failure to give notice will only excuse an insurer if the insurer—who bears the burden—can show that it was prejudiced by the lack of notice. *Ouellette v. Maine Bonding & Cas. Co.*, 495 A.2d 1232, 1235 (Me.1985). The ordinary showing of prejudice is a showing by the insurer of a possible defense against liability in the original action against its insured and a further showing

---

2. After the magistrate judge's recommended decision, Maine's highest court held that an insurance company that breached its obligation to defend could still show that the policy did not require indemnification. *See Elliott v. Hanover Ins. Co.*, 711 A.2d 1310, 1313 & n. 3 (Me.1998).

that the delay in notice impaired its ability to assert that defense. *E.g., American Home Assurance Co. v. Ingeneri,* 479 A.2d 897, 902 (Me.1984).

■ Selective argues that prejudice is obvious: if it had been informed before the default of the original Franco suit against the insured, Selective could have taken charge of the litigation and defended on the ground that (as the facts later showed) Stafford Glass did not work on the Maine Mall project and Franco was not its employee. This is a plausible contention, although perhaps less certain than Selective assumes since Franco's claims in the original lawsuit were various and the relationship between the two companies remains obscure. Still, the question remains whether Selective was prejudiced in asserting any such defense by the delay in notice.

Although it might seem obvious that an entry of default makes any defense more difficult, prejudice is a matter of degree and Maine has held that entry of a default does not establish prejudice as a matter of law. *See Ingeneri,* 479 A.2d at 901–02. In federal court, entry of a default is a step prior to entry of a judgment of default and the default can readily be set aside for good cause. *Coon v. Grenier,* 867 F.2d 73, 76 (1st Cir.1989). Here, Selective says that the defendants themselves moved to set aside the default and were rebuffed by the magistrate judge, demonstrating that Selective would have been similarly treated if it had sought to take over the defense when it first received notice of the litigation in December 1996.

But the defendants did not move to set aside the default until June 1997 and only *their* neglect was held not excusable; it is by no means apparent that the magistrate judge would have ruled the same way if Selective had appeared in December 1996, cast as an innocent insurer who had never been given notice, and asked only two months after the default to set it aside and present a colorable defense to the law suit. *Cf. Lieberman v. Aetna Ins. Co.,* 249 Cal. App.2d 515, 57 Cal.Rptr. 453 (1967); 8 Appelman, *Insurance Law & Practice,* § 4860 (1981) ("[B]ecause [the insurer] would be bound by a default judgment, it may be a proper party to have it set aside.").

Who should bear the burden of the uncertainty created by Selective's inaction? Maine law seems to answer the question by putting the burden of showing prejudice on the insurer and presuming strongly against such a showing. *See Ingeneri,* 479 A.2d at 901–02. As we have said, prejudice is a matter of degree and the matter would be different if a motion by Selective in December 1996 to remove the default were a long shot. But we think such a motion, at least if made by Selective in a timely fashion, had a good chance and that the requisite degree of prejudice required by state law has not been shown.

Selective also argues that Franco is bound by judicial estoppel to his assertion, in his original suit against Stafford Glass, that he was employed by Stafford Glass. That position, although it was potentially helpful to Franco's claims against Stafford Glass in the original action, is arguably inconsistent with his position in the present case. This is so because the insurance policy (under which Franco claims as an assignee) excludes from coverage claims by employees for "bodily injury," and bodily injury was at least one of the injuries on which the original complaint was premised.

The district court rejected the judicial estoppel argument: it found that, as Stafford Glass' assignee, Franco was allowed to take the position that Stafford Glass has consistently taken throughout the litigation, namely, that Franco was not an employee of Stafford. There seems to be little or no case law involving judicial estoppel vis a vis the positions that may be taken in litigation by assignees. The cliche that an assignee "'stands in the shoes' of the assignor," *Rhode Island Hosp. Trust Nat'l Bank v. Ohio Cas. Ins. Co.,* 789 F.2d 74, 81 (1st Cir.1986) (quoting

10 Jaeger, *Williston on Contracts* § 432, at 182 (3d ed.1967)), mildly supports the district court's conclusion but is too general to be conclusive, and we are not prepared to say that an assignee is always free to take in that capacity positions that he would be estopped from taking in his personal capacity.

■ But neither is judicial estoppel an automatic bar against inconsistent positions. There are plenty of cases "where a party is free to assert a position from which it later withdraws." *Desjardins v. Van Buren Community Hosp.*, 37 F.3d 21, 23 (1st Cir.1994). Although the doctrine has varied somewhat among the circuits, *see Lydon v. Boston Sand & Gravel Co.*, 175 F.3d 6, 12 (1st Cir.1999), the First Circuit rule is that judicial estoppel "should be employed when a litigant is 'playing fast and loose with the courts,' and when 'intentional self-contradiction is being used as a means of obtaining unfair advantage.'" *Patriot Cinemas, Inc. v. General Cinema Corp.*, 834 F.2d 208, 212 (1st Cir.1987) (quoting *Scarano v. Central R. Co.*, 203 F.2d 510, 513 (3d Cir.1953)).

■ "Unfair advantage" generally requires that a party have "succeeded previously with a position directly inconsistent with the one it currently espouses." *Lydon*, 175 F.3d at 12–13. Here, it is not crystal clear that Franco's recovery against Stafford Glass depended conceptually on proof that he was its employee; he has suggested various ways in which recovery could be had under his various claims in the original complaint even if Stafford Glass were not his employer. One cannot know which theories would have succeeded had the case gone to trial; but that is no fault of Franco's. Selective

has not carried its burden of proving unfair advantage.

Selective also invokes res judicata, but neither of its branches applies in this case. Merger or bar, now called claim preclusion, is patently inapplicable. It applies only where the cause of action and the parties are the same. *See Aunyx Corp. v. Canon U.S.A., Inc.*, 978 F.2d 3, 6 (1st Cir.1992), *cert. denied*, 507 U.S. 973, 113 S.Ct. 1416, 122 L.Ed.2d 786 (1993). Here, putting to one side the fact that Selective was not a party in the original action, the causes of action are not the same: the original suit was a tort suit against Stafford Glass and its co-defendants; the present suit is effectively a contract action by an insured to assert a right of indemnification under an insurance policy.

■ Nor does collateral estoppel, now called issue preclusion, do Selective any good. Ignoring the party dimension, collateral estoppel—a doctrine of efficiency—bars relitigation in a second action only of issues *actually litigated* in an earlier action. *Grella v. Salem Five Cent Sav. Bank*, 42 F.3d 26, 30 (1st Cir.1994). Here, the earlier action ended in a default and was resolved only by a consent judgment: no issues were judicially determined. Consent judgments may be given collateral estoppel effect if the parties clearly intend issues to be settled for the purposes of subsequent litigation between them, *United States v. Brekke*, 97 F.3d 1043, 1049 (8th Cir.1996), *cert. denied*, 520 U.S. 1132, 117 S.Ct. 1281, 137 L.Ed.2d 356 (1997), but this rests on agreement rather than efficiency and there is no such agreement here.[3]

This case has several troubling features and none is more troubling than the notion that Franco can collect indemnification, on

---

3. A party who defaults is taken to have conceded the truth of the factual allegations in the complaint as establishing the grounds for liability as to which damages will be calculated. *Quirindongo Pacheco v. Rolon Morales*, 953 F.2d 15, 16 (1st Cir.1992), but this has nothing to do with collateral estoppel; and, of course, Franco did not default. Selective cites to cases that say that an insured is bound by the outcome of an underlying liability action; but these cases turn out to involve litigated issues subject to collateral estoppel. *E.g., Hartford Accident & Indem. Co. v. Villasenor*, 21 Ariz.App. 206, 517 P.2d 1099 (Ariz.Ct.App.1974).

the theory that Selective is liable to Stafford Glass, for a $500,000 consent judgment that cannot itself be enforced by Franco against Stafford Glass (except in the amount of $15,000). If Franco stands in the shoes of Stafford Glass by assignment, why can he collect from Stafford Glass' insurer $485,000 that Stafford Glass does not actually owe Franco? And yet nowhere on this appeal, or apparently in the district court, has Selective argued that the consent judgment should be treated, so far as indemnification is concerned, as effectively only one for $15,000.

A review of the case law reveals that "covenants not to execute" (as they are called) have not been found automatically to preclude indemnification claims. *See Glenn v. Fleming*, 247 Kan. 296, 799 P.2d 79, 92 (Kan.1990) (collecting cases). Although there may be some backlash developing in certain states against "sweetheart" or "sham" deals, *see, e.g., State Farm Fire & Cas. Ins. Co. v. Gandy*, 925 S.W.2d 696 (Tex.1996), the majority of courts still accept these arrangements, at least where the insurer has wrongfully failed to provide a defense and the settlement was reasonable and made in good faith. *See Glenn*, 799 P.2d at 92–93; *Griggs v. Bertram*, 88 N.J. 347, 443 A.2d 163, 171–74 (N.J.1982). Here, the arbitrator found the amount reasonable and, in all events, the "pseudo-judgment" issue with which we remain concerned has been waived and we do not decide it.

*Affirmed.*