Robert GRAHAM, et al., Plaintiffs

v.

Dr. Kyl SMITH, et al., Defendants

No. CIV. 03–195–P–H.

United States District Court,
D. Maine.

Oct. 10, 2003.

Order Denying Reconsideration
Nov. 17, 2003.

154

Michael Joseph Gartland, Marcus, Clegg & Mistretta, P.A., Portland, ME, Jonathan Shapiro, Moon, Moss, McGill, Hayes & Shapiro, P.A., Portland, ME, for Robert Graham and Michael Shane, Plaintiff.

David B. McConnell, Perkins, Thompson, Hinckley & Keddy, Portland, ME, Richard A, Green, Jr., Law Offices of Green & Associates, Dripping Springs, TX, for Kyl Smith and Creative Health Institute, Inc., Defendants.

## ORDER ON MOTION FOR PRELIMINARY INJUNCTION

HORNBY, District Judge.

The plaintiffs have moved for a preliminary injunction against a pending arbitration proceeding. They argue that they never agreed to submit their disputes to arbitration. I find that the plaintiffs have met the likelihood of success standard on their claim that they did not individually agree to arbitrate any disputes and satisfy the other criteria for preliminary injunctive relief. I therefore **GRANT** the motion.[1]

---

1. Graham's and Shane's request that this motion for a preliminary injunction not be re-

ferred to a United States Magistrate Judge

## BACKGROUND

The plaintiffs Robert Graham and Michael Shane ("Graham" and "Shane") are officers of Vital Basics, Inc. ("Vital Basics"). Graham Aff. ¶ 1 (Docket Item 5); Shane Aff. ¶ 1 (Docket Item 4). Vital Basics entered into a marketing agreement with Dr. Kyl Smith ("Smith") and Creative Health Institute, Inc. ("Creative Health"). Graham Aff. ¶ 4. The agreement provided that Vital Basics would market Focus Factor, a nutritional supplement, and pay royalties. *Id.* ¶¶ 4–6. Smith and Creative Health agreed that, upon receiving $1.0 million in royalties, they would transfer all ownership rights in Focus Factor to Vital Basics. *Id.* ¶ 7. Eventually, Smith and Creative Health assigned to Vital Basics their rights, title, and interests in Focus Factor. *Id.* ¶ 11. Both the original agreement and the assignment agreement contained arbitration provisions. Pls.' Mot., Exs. 2 & 4 (Docket Item 2). But Shane did not sign either agreement and Graham signed both agreements only as a corporate officer of Vital Basics. *Id.*

In December, 2002, Smith and Creative Health filed an arbitration demand against Vital Basics, Graham and Shane. Graham Aff. ¶ 17. That arbitration proceeding is currently pending in Portland, Maine. *Id.* ¶ 18.

■ On April 14, 2003, Smith and Creative Health filed a lawsuit in Texas state court, seeking injunctive and other equitable relief against Vital Basics, Graham and Shane. *Id.* ¶ 23. Vital Basics, Graham and Shane removed the lawsuit to federal court in Texas and filed a motion to dismiss on various grounds, one of which was the arbitrability of certain claims. Defs.' Resp., Ex. C at 22–26 (Docket Item 10);

Green Aff. ¶ 12 (Docket Item 11). Of those claims for which they made the argument that arbitration was required, only Count 3 dealt with Graham and Shane individually. Count 3 of the complaint was directed at Graham and Shane in addition to Vital Basics and sought rescission of the assignment agreement based on Graham's and Shane's alleged fraudulent misrepresentations.[2]

On May 7, 2003, Vital Basics, Graham and Shane filed an answer in the Portland arbitration proceeding. Defs.' Resp., Ex. A. Although the answer noted that Graham and Shane were not parties to any of the agreements and therefore "not proper parties to this arbitration," *id.* n. 1, Graham and Shane did not actually move to dismiss. On May 12, 2003, Graham, Shane, and Vital Basics amended their answer, this time moving to dismiss Graham and Shane on the ground that individually they were not parties to the agreement to arbitrate. Defs.' Resp., Ex. B. The next day, the Texas lawsuit was dismissed pursuant to a letter agreement ("the settlement agreement"). Shane Aff. ¶ 26. One version of the agreement had a clause dismissing Graham and Shane from the arbitration, Shapiro Aff. Attachments (Docket Item 16), but the clause is not in the final agreement. In the settlement agreement, Smith, Creative Health, Graham, Shane and Vital Basics all agreed to submit their disputes to non-binding mediation. Pls.' Mot., Ex. 5. In addition, Paragraph 5 provides:

> Vital Basics, Inc. agrees not to contend that [Smith and Creative Health] have waived their right to bring in the pending AAA arbitration proceeding any of

(Docket Item 3) is, by virtue of this decision, moot.

**2.** I obtained Smith's and Creative Health's complaint from the Eastern District of Texas's Pacer System on the internet and take judicial notice of this pleading. *See* 21 Wright & Graham, Federal Practice and Procedure: Evidence § 5106; *Lussier v. Runyon*, 50 F.3d 1103, 1114 n. 14 (1st Cir.1995).

the claims previously asserted in the Texas Lawsuit simply because such claims have been dismissed by virtue of the dismissal of the Texas Lawsuit pursuant to this letter. Creative Health Institute, Inc. and Kyl Smith agree that nothing in this letter agreement shall prejudice the right of Vital Basics, Inc. or Robert Graham or Michael Shane to raise any defense or counterclaim in such pending AAA arbitration proceeding. . . .

Pls.' Mot., Ex. 5.

On July 10, 2003, the panel of arbitrators issued the First Pre–Hearing Order, reserving ruling on Graham's and Shane's motion to dismiss until final award. Pls.' Mot., Ex. 7. Graham and Shane asked the arbitration panel to reconsider its ruling, but in its Second Pre–Hearing Order, the panel declined to do so. *Id.*, Ex.8. On August 18, 2003, Graham and Shane filed this federal lawsuit, and on August 20, 2003, they filed a motion for a preliminary injunction. They maintain that the arbitration proceeding should be enjoined from proceeding against them because they never agreed to submit any disputes to arbitration. *Id.* at 9.

#### ANALYSIS

■ To obtain preliminary injunctive relief, Graham and Shane must demonstrate the following: (1) they will suffer irreparable injury if injunctive relief is not granted; (2) such harm to Graham and Shane outweighs any harm that a grant of injunctive relief would inflict on Smith and Creative Health; (3) Graham and Shane have a likelihood of success on the merits; and (4) the public interest will not be adversely affected by the grant of injunctive relief.

**3.** When parties disagree about whether they are bound by an arbitration agreement, the court, not the arbitrator, decides the issue, unless there is clear and unmistakable evidence that the parties intended to submit the arbitrability question itself to arbitration.

*Securities and Exchange Commission v. Fife,* 311 F.3d 1, 8 (1st Cir.2002).

#### *(1) Likelihood of Success*

■ The First Circuit has described likelihood of success as "the touchstone of the preliminary injunction inquiry." *Philip Morris, Inc. v. Harshbarger,* 159 F.3d 670, 674 (1st Cir.1998).

■ It is "bedrock" that "arbitration is a matter of contract and that a party cannot be required to submit to arbitration any dispute which he has not agreed so to commit." *Intergen v. Grina et al.,* 344 F.3d 134, 142–43 (1st Cir.2003); *McCarthy v. Azure,* 22 F.3d 351, 354 (1st Cir.1994). The Supreme Court has said that "[w]hen deciding whether the parties agreed to arbitrate a certain matter . . ., courts generally should apply ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995). The agreements underlying this dispute provide that Maine law governs. Maine requires "clear contractual language evidencing an intent to be bound to [arbitrate]." *Maine Cent. R.R. v. Bangor & Aroostook R.R.,* 395 A.2d 1107, 1116 (Me.1978).

■ Both the marketing agreement and the assignment agreement contain clear arbitration provisions, but neither Graham nor Shane signed these documents in a personal capacity. Therefore, Graham and Shane have a very strong case that neither of these agreements binds them individually to arbitrate.[3]

*First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995). Because there is no clear and unmistakable evidence of such intent, I ultimately must decide whether Shane and Graham have agreed to arbitrate.

Smith and Creative Health argue that the May 13 settlement agreement is an express agreement to arbitrate, or alternatively that Graham and Shane are judicially or equitably estopped to challenge the pending arbitration.

■ **(a) *The May 13 Agreement.*** The express agreement argument presents a troubling question. On the one hand, it is hard to understand why the parties would dismiss the Texas lawsuit in favor of mediation and arbitration, only to have a later determination of nonarbitrability and a return to court. Language in the settlement agreement is certainly consistent with arbitration.[4] On the other hand, the settlement agreement does not explicitly require Graham and Shane to arbitrate and probably requires parol evidence to clarify its ambiguity. Therefore, it hardly amounts to "clear contractual language," as the Maine cases require.

■ **(b) *Judicial Estoppel.*** Maine has long recognized the doctrine of judicial estoppel, *see, e.g., Fogler v. Clark,* 80 Me. 237, 14 A. 9 (1888), but it has not specified its contents. I consult federal definitions. The doctrine of judicial estoppel "prevents a litigant from pressing a claim that is inconsistent with a position taken by that litigant" in a prior legal proceeding. *Intergen v. Grina et al.,* 344 F.3d 134, 144–45 (1st Cir.2003). According to the United States Supreme Court, at least three factors inform the decision whether to apply judicial estoppel, but they are neither inflexible nor exhaustive: (1) is the later position "clearly inconsistent" with the earlier position?; (2) did the earlier position persuade a court, so that judicial acceptance of the later position would suggest

that one court was misled?; (3) is there an unfair advantage or unfair detriment? *New Hampshire v. Maine,* 532 U.S. 742, 750–51, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001).

*(i)* Smith and Creative Health contend that Graham's and Shane's argument in the motion to dismiss the Texas lawsuit is clearly inconsistent with Graham's and Shane's argument in this court that they are not bound to arbitrate any disputes. The Texas pleadings reveal, however, that the two positions taken by Graham and Shane are not really inconsistent. In the Texas lawsuit, Smith and Creative Health had sought only equitable relief. In the pending arbitration proceeding, they seek only damages. Count 3 of the Texas lawsuit, the only count referring to Graham and Shane individually, sought rescission of the assignment agreement with Vital Basics, and Graham and Shane argued that rescission was a matter for arbitration. Their argument now—that they had never agreed to allow an arbitrator to decide their potential personal liability for damages—is not "clearly inconsistent" with the earlier position.

*(ii)* The First Circuit has suggested that, in order for judicial estoppel to apply, "the first forum [must have] *accepted* the legal or factual assertion alleged to be at odds with the position advanced in the current forum ...." *Gens v. Resolution Trust Corp.,* 112 F.3d 569, 572 (1st Cir. 1997) (emphasis in original); *Franco v. Selective Ins. Co.,* 184 F.3d 4, 9 (1st Cir. 1999). Because of the settlement agreement, the Eastern District of Texas did not have the opportunity to rule on Graham's, Shane's and Vital Basic's motion to

---

4. Smith and Creative Health also argue that there was "an explicit representation by counsel that the parties would be resolving their disputes in the Arbitration Proceeding." Defs.' Resp. at 8. Graham and Shane deny this and also object to the affidavit upon which this argument is based, saying that the parties assured the magistrate judge that there would be no factual disputes. This controversy will have to await the further development of the record.

dismiss and therefore cannot be said to have "accepted" their position on arbitrability.

*(iii)* Prior to *New Hampshire v. Maine,* the First Circuit had indicated that harm or "unfair detriment" was not a prerequisite to applying judicial estoppel. *Patriot Cinemas v. General Cinema,* 834 F.2d 208, 214 (1st Cir.1987). In any event, because Graham and Shane have not pressed contradictory arguments, any detriment to Smith and Creative Health in permitting the challenge to arbitrability can not be called "unfair."

I conclude, therefore, that judicial estoppel does not require Graham and Shane to arbitrate.

■■■ (c) *Equitable Estoppel.* Finally, Smith and Creative Health argue that Graham and Shane are bound by the arbitration clauses in the original marketing and assignment agreements under the doctrine of equitable estoppel. The First Circuit recently noted that courts "have been hesitant to estop a nonsignatory seeking to avoid arbitration." *Intergen v. Grina et al.,* 344 F.3d 134, 145–46 (1st Cir.2003). "[E]stoppel has been limited to cases [that] involve non-signatories who, during the life of the contract, have embraced the contract despite their non-signatory status but then, during litigation, attempt to repudiate the arbitration clause in the contract." *Id.* (internal quotation omitted). To support their position that estoppel is appropriate in this case, Smith and Creative Health rely on *Johnson v. Polaris Sales, Inc.,* 257 F.Supp.2d 300, 307 (D.Me.2003). In *Johnson,* the court held that non-signatories were bound to arbitrate when they owned the signatory company, enjoyed direct benefits of the contract, and based a lawsuit upon those benefits. *Id.* Unlike the non-signatories in *Johnson,* however, Graham and Shane do not assert claims that derive from contracts they did not sign. In addition, the record contains no

evidence that Graham and Shane derived any direct benefits from the contracts. There is no basis for applying equitable estoppel in this case.

I conclude, therefore, that Graham and Shane have shown a high likelihood of success on their claim that individually they are not bound to arbitrate the dispute.

## *(2) Other Preliminary Injunction Factors*

In this case, the likelihood of success prong of the preliminary injunction test is the deciding factor. Granting the preliminary injunction does not affect the public interest. The balance of harms between Smith and Creative Health on the one hand and Graham and Shane on the other does not tip in either direction. If I do not grant the injunction, Graham and Shane will participate in the arbitration proceeding and, if the arbitration panel renders a ruling adverse to them individually, they will appeal, with an ultimate decision on arbitrability by the court. If I enjoin the arbitration as to Graham and Shane, the arbitration proceeding will go forward against Vital Basics; Smith and Creative Health will simply have to decide whether to pursue a separate lawsuit against Graham and Shane individually.

## CONCLUSION

Accordingly, I **GRANT** the plaintiffs' motion for a preliminary injunction. The plaintiffs shall prepare a form of order accordingly. Moreover, under Rule 65(c), before a preliminary injunction issues, Graham and Shane must give Smith and Creative Health security for whatever costs they may incur or pecuniary injury they may suffer while this preliminary injunction is pending. Since Vital Basics remains a party to the pending arbitration proceeding, presumably the expense of

continuing the arbitration proceeding without Graham and Shane will be essentially the same as the expense that Smith and Creative Health would have incurred absent this injunction. Additional expenses that Smith and Creative Health may incur as a result of this injunction include the costs of filing a protective lawsuit against Graham and Shane individually and the costs of recommencing the arbitration proceeding against Graham and Shane in the event that the injunction does not stand. In the absence of any information from Smith and Creative Health regarding their anticipated expenses, I find that One Thousand Dollars ($1000) is sufficient. The plaintiffs shall post a bond accordingly.

So Ordered.

### ORDER ON DEFENDANTS' MOTION FOR RECONSIDERATION ON PRELIMINARY INJUNCTION ORDER

■ On October 10, 2003, I granted Robert Graham's and Michael Shane's motion for a preliminary injunction. Dr. Smith and Creative Health have filed a motion for reconsideration. They correctly point out that the Order did not expressly address the question of irreparable harm (although it was implicit in my treatment of the balancing of harms, since harm to the plaintiff is one side of the balance).

Smith and Creative Health argue that Graham and Shane will not suffer irreparable injury if they are forced to arbitrate, because the ability to appeal an unfavorable arbitration award is an adequate legal remedy. They rely on *Springfield Term. R. Co. v. United Transport Union*, 711

F.Supp. 665 (D.Me.1989). Unlike Graham and Shane, the plaintiffs in *Springfield* did not argue that they had not agreed to submit any disputes to arbitration; instead, the challenge there was that the arbitration award was "tainted." The court's holding in *Springfield,* that review of such an arbitration award was an adequate legal remedy, does not fit the facts of this case.

The Third Circuit has held that preliminary injunctive relief is appropriate in a context like that presented here, stating that "we think it is obvious that the harm to a party could be *per se* irreparable if a court were to abdicate its responsibility to determine the scope of an arbitrator's jurisdiction and, instead, were to compel the party, who has not agreed to do so, to submit to an arbitrator's own determination of his authority." *PaineWebber Inc. v. Hartmann,* 921 F.2d 507, 515 (3d Cir. 1990); *accord McLaughlin Gormley King Co. v. Terminix Int'l. Co.,* 105 F.3d 1192, 1194 (8th Cir.1997) ("If a court has concluded that a dispute is non-arbitrable, prior cases uniformly hold that the party urging arbitration may be enjoined from pursuing what would now be a futile arbitration, even if the threatened irreparable injury to the other party is only the cost of defending the arbitration and having the court set aside any unfavorable award."); *Raytheon Engineers & Constructors, Inc. v. SMS Schloemann–Sieman Akiengesellschaft,* 2000 WL 420866, *3, 2000 U.S. Dist. LEXIS 5718 at *13 (N.D.Ill. March 16, 2000) ("forcing a party to arbitrate a dispute that it has not agreed to arbitrate is irreparable harm.").[1]

---

1. The First Circuit has said that "irreparable injury is nominally required but courts are often generous where the complainant's claim on the merits is very strong or unanswerable." *Tejidos de Coamo, Inc. v. Int'l. Ladies' Garment Workers' Union,* 22 F.3d 8, 15 (1st Cir.1994). In that case the court denied injunctive relief, but it was because of the overriding policy of section 7 of the Norris La-Guardia Act, 29 U.S.C. § 107, which requires that stringent conditions be met before a federal court may grant an injunction in a case involving a labor dispute. That provision is not applicable here.

Here, Graham and Shane have a very strong case that they never agreed to submit to arbitration. Therefore, I now make explicit what was implicit in my earlier Order: Graham and Shane would suffer irreparable injury if I did not issue the preliminary injunction. Accordingly, I DENY the motion for reconsideration.

So ORDERED.