JOHN F. OTIS, THIRD *vs.* ARBELLA MUTUAL INSURANCE
COMPANY & others.[1]

Suffolk. November 2, 2004. - March 14, 2005.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Estoppel. Judicial Estoppel. Attorney at Law,* Malpractice. *Insurance,* Defense
of proceedings against insured, Insurer's obligation to defend. *Consumer
Protection Act,* Insurance. *Negligence,* Attorney at law, Insurance company,
Misrepresentation. *Contract,* Performance and breach, Implied covenant of
good faith and fair dealing.

In a civil action, the judge properly granted summary judgment in favor of the
defendants, where the doctrine of judicial estoppel barred the plaintiff's
claims against them, in that the plaintiff's claims in this action included an
assertion that was diametrically contrary to the position he had taken in a
previous suit in which he had been successful, as well as a changed posi-
tion on an evidentiary argument successfully raised in the prior litigation,
and nothing precluded the application of the doctrine to this action.
[639-648]

CIVIL ACTION commenced in the Superior Court Department on
June 21, 1999.

The case was heard by *Christopher J. Muse,* J., on motions
for summary judgment.

The Supreme Judicial Court granted applications for direct
appellate review.

*Paul J. Driscoll (David P. Dwork* with him) for the plaintiff.

*Richard W. Renehan (Patrick M. Curran, Jr.,* with him) for
Anthony M. Moccia & others.

*Scott C. Ford (Steven J. Torres* with him) for Arbella Mutual
Insurance Company.

SOSMAN, J. The plaintiff, John F. Otis, III, has appealed from a
decision of the Superior Court, which granted summary judg-

[1]Anthony M. Moccia; Eckert, Seamans, Cherin & Mellott (a common-law
partnership, by and through its individual partners); and Eckert, Seamans,
Cherin & Mellott, LLC.

ment in favor of all defendants on the ground that Otis's claims against them were barred by the doctrine of judicial estoppel. The facts and theories on which Otis's present claims are based are the precise opposite of the facts and theories that Otis successfully asserted in prior litigation. Despite taking inconsistent positions in sequential lawsuits, Otis contends that the doctrine of judicial estoppel should not have been interposed to prevent him from pursuing his present suit. We granted the applications of both parties for direct appellate review. For the following reasons, we conclude that there was no error in the judge's determination that judicial estoppel should operate to bar Otis's present claims.

1. *Background.* In 1992, Otis sued one Todd Cusick to recover for injuries he sustained in an automobile accident. That suit was predicated on the following facts. At approximately 1 A.M. on October 5, 1991, Otis and a companion, Shannon O'Malley, were crossing Route 18 in Weymouth when they were struck by a vehicle driven by Cusick. Cusick fled the scene, but was later apprehended and charged with operating a motor vehicle while under the influence of liquor (causing serious bodily injury), and leaving the scene of an accident. Cusick, whose level of intoxication was such that he claimed to have no memory of these events, pleaded guilty to both offenses pursuant to *North Carolina* v. *Alford*, 400 U.S. 25, 37 (1970).

Cusick was insured by Arbella Mutual Insurance Company, and Arbella retained the law firm of Eckert, Seamans, Cherin & Mellott (ESCM) to represent Cusick in connection with Otis's personal injury claims. ESCM assigned the case to attorney Anthony Moccia, a partner at ESCM. In December, 1993, Arbella tendered a check in the amount of the policy limit ($50,000), without obtaining a release in favor of Cusick.[2] The case was ultimately tried in 1998.

Moccia's defense of Cusick was predicated in large measure

---

[2]At the time, insistence on such a release would have been treated as an unfair settlement practice in violation of G. L. c. 176D, § 3 (9) (*f*). See *Thaler* v. *American Ins. Co.*, 34 Mass. App. Ct. 639, 643 (1993). This court later rejected that interpretation of § 3 (9) (*f*). *Lazaris* v. *Metropolitan Prop. & Cas. Ins. Co.*, 428 Mass. 502, 504-506 (1998).

on a theory of Otis's comparative negligence.[3] Otis had been intoxicated at the time of the accident, with a blood alcohol level in excess of 0.14 per cent.[4] Because he was not in a crosswalk, Otis had a duty to yield the right of way to an oncoming vehicle. See 720 Code Mass. Regs. § 9.09(5) (1996). Moccia argued to the jury that, instead of proceeding to a nearby crosswalk, an intoxicated Otis and O'Malley had instead walked out into the middle of a State highway "and then didn't heed a vehicle coming." It was negligent, he argued, for Otis "to walk into the middle of a [S]tate highway at one o'clock in the morning and take [his] chances." By contrast, the driver of the vehicle (see note 3, *supra*) had suddenly and unexpectedly come on two pedestrians crossing the highway late at night, and had understandably slammed on the brakes, causing the vehicle to swerve and hit Otis and O'Malley. Moccia thus argued that Otis's failure to use reasonable care was a proximate cause of the accident, and that Otis's negligence outweighed that of the driver.

Counsel for Otis countered these theories of comparative negligence by reference to the location on the roadway where the impact occurred. An eyewitness to the accident, one Gregory Gomes, testified that Otis and O'Malley began crossing from the west side of Route 18 to the east side, but then stopped one or two feet shy of the yellow line; the vehicle, traveling in the northbound lane, swerved across the center line into the southbound lane and hit Otis and O'Malley. Based on Gomes's testimony, counsel for Otis argued that Otis had yielded the right of way by stopping in the southbound lane, leaving Cusick free to continue unobstructed in the northbound lane. He also argued, again based on Gomes's testimony, that the issue of Otis's intoxication was irrelevant — having stopped in the southbound lane, Otis's intoxication had nothing to do with Cu-

---

[3]Moccia also pursued the argument that Otis had insufficient evidence to prove that Cusick had been driving the vehicle.

[4]Based on Otis's blood alcohol level of 0.14 per cent approximately one hour after the accident, an expert witness opined that Otis's blood alcohol level at the time of the accident would have been as high as 0.20 per cent.

sick's vehicle swerving from the northbound lane into that southbound lane and striking him.[5]

During their deliberations, the jury asked the judge two questions concerning Cusick's contention that Otis had failed to yield the right of way: "What constitutes pedestrian yielding right of way? Does standing in opposite lane meet the require-

---

[5]The closing argument by Otis's counsel included the following refutation of the theory of comparative negligence:

> "Now let me get quickly to John Otis's alleged comparative negligence. I entreat you, ladies and gentlemen, not to buy the defense of blame the victim. The testimony was, unrebutted testimony by anybody was that Mr. Otis stopped and looked left and right and saw nothing the first time. Started out into the roadway and when he got close to the center line, looked again and all three of them saw a car coming which they thought was coming fast.

> "Mr. Gomes testified that O'Malley and Otis stopped to let the car go by. Now they were in the southbound lane. And Mr. Cusick is driving sixty-five miles an hour in the northbound lane. Might it have been prudent to turn around and boogie back to the sidewalk? I'll bet you Mr. Otis wishes he had done so, ladies and gentlemen.

> "But that's not the issue before you. The issue is, is he [responsible] for this accident when he stayed in the southbound lane and stopped short of the yellow line? Remember the testimony wasn't one foot, it was a minimum of one foot to a maximum of two and a half feet back.

> "Well two and a half feet's almost a yard, ladies and gentlemen. I'm about this far back from there and that's the yellow line and I see the car coming. It's coming faster than I thought it was and I stop. And at the very last second it swerves into my lane and wipes out those two young men.

> "Now what's the argument? The argument is we are point, whatever it is, one four or something. What are we supposed to do then, jump up in the air? What are we supposed to do, dive out of the way? The guy is going sixty-five miles an hour in the northbound lane and like that, it's in the southbound lane.

> "So that's the argument. The argument is comparatively negligent? I entreat you, don't buy the blame the victim defense. And on that question where it says fifty-fifty, added up to a hundred, who was responsible? I entreat you to put down zero for Mr. Otis. No comparative negligence."

ment of yielding right of way?"[6] On September 23, 1998, the jury returned a verdict in favor of Otis, and assessed damages in the amount of $4 million. The jury rejected Cusick's contention that Otis had also been negligent, finding no comparative negligence on Otis's part.

Cusick filed a motion for a new trial, claiming, inter alia, that the judge had erroneously allowed Otis to introduce evidence that, while fleeing the scene, the driver of the vehicle had run over O'Malley's head.[7] He contended that that evidence was irrelevant to Cusick's alleged liability for striking Otis, and that, even if it were relevant, that minimal relevance was outweighed by the prejudicial nature of the evidence. Otis's opposition to that motion for a new trial argued that the evidence had been admitted properly, as the two victims had been struck essentially simultaneously as part of the same incident, making it appropriate for the witness to describe the entire scene. He also argued that the evidence pertaining to O'Malley's being struck and then run over had not been prejudicial — given the seriousness of the accident and resulting injuries, that one additional detail would not operate to inflame the jury. The motion for a new trial was denied. No appeal was taken, and on November 17, 1998, execution issued in the amount of $6,585,195.30.

One month later, recognizing that Cusick's assets would be insufficient to satisfy the judgment, Otis released Cusick from all liability on that judgment in exchange for an assignment of any claims that Cusick might have against Attorney Moccia, ESCM, or Arbella arising from their defense of Cusick in the underlying action. Based on that assignment, Otis's counsel sent Moccia, ESCM, and Arbella a demand letter under G. L. c. 93A, § 9, contending that they had breached their respective duties to Cusick by failing to investigate the claims against him, failing to provide him a competent defense, and failing to pursue an appeal. Specifically, Otis contended that the defendants had overlooked (and therefore failed to introduce at trial) "unassail-

---

[6]The record provided does not include the judge's instructions in response to those questions, but Otis claims that the judge responded to the first question and declined to answer the second question.

[7]O'Malley's own claims against Cusick had been settled, and were not before the jury at Otis's trial.

able physical and forensic evidence" establishing that Otis and O'Malley had been across the middle line and into the northbound lane at the moment of impact, and that Cusick had not swerved into the southbound lane until *after* the impact with the two pedestrians. Otis now contended, based on that physical and forensic evidence, that he had in fact been "several feet beyond the center line of Route 18 and entirely within Cusick's northbound lane of travel," and that he had "seen Cusick's car approaching, and yet had stood still in Cusick's lane of travel making no effort to get out of harm's way." Otis's demand letter went on to allege that, if the jury had been aware of these facts, "[t]here can be no doubt" that the jury would have found Otis more than fifty per cent at fault for the accident, with a resulting verdict in favor of Cusick. See G. L. c. 231, § 85.

In his demand letter, Otis also alleged that Moccia had purposefully failed to communicate Arbella's and Cusick's respective positions on whether to take an appeal, resulting in a failure to file what allegedly would have been a meritorious appeal. Contrary to the position he had taken in opposing Cusick's motion for a new trial, Otis now claimed that the judge had erred in admitting evidence that Cusick's vehicle had run over O'Malley's head, that the evidence had had "no probative value," and that its introduction had been "highly prejudicial" to Cusick. That error, according to Otis's demand letter, "clearly presented a valid and winnable appellate issue."

In his second amended complaint, Otis alleged that these failures with respect to the defense and representation of Cusick "caused" the judgment against Cusick to enter, and that the judgment he (Otis) had obtained was "a result of" the defendants' negligence, breach of contract, breach of implied covenant of good faith and fair dealing, intentional and negligent misrepresentations, and violations of G. L. c. 93A. The defendants each moved for summary judgment on the ground that Otis's present assertions were diametrically opposed to those he had made in his original, successful suit against Cusick, and that his present claims should therefore be barred by judicial estoppel. The judge agreed, and entered summary judgment in favor of all defendants. The present appeal followed.

2. *Discussion.* "Judicial estoppel is an equitable doctrine that

precludes a party from asserting a position in one legal proceeding that is contrary to a position it had previously asserted in another proceeding." *Blanchette* v. *School Comm. of Westwood,* 427 Mass. 176, 184 (1998). See *East Cambridge Sav. Bank* v. *Wheeler,* 422 Mass. 621, 623-624 (1996); *Fay* v. *Federal Nat'l Mtge. Ass'n,* 419 Mass. 782, 787-788 (1995). "The purpose of the doctrine is to prevent the manipulation of the judicial process by litigants." *Canavan's Case,* 432 Mass. 304, 308 (2000). As an equitable doctrine, judicial estoppel is not to be defined with reference to "inflexible prerequisites or an exhaustive formula for determining [its] applicability." *New Hampshire* v. *Maine,* 532 U.S. 742, 751 (2001). Rather, the doctrine is properly invoked whenever a "party is seeking to use the judicial process in an inconsistent way that courts should not tolerate." *East Cambridge Sav. Bank* v. *Wheeler, supra* at 623.

Application of the equitable principle of judicial estoppel to a particular case is a matter of discretion. *New Hampshire* v. *Maine, supra* at 750, quoting *Russell* v. *Rolfs,* 893 F.2d 1033, 1037 (9th Cir. 1990). On appeal from a judge's decision to bar a litigant's claim on grounds of judicial estoppel, we therefore review for abuse of discretion. See *Alternative Sys. Concepts, Inc.* v. *Synopsys, Inc.,* 374 F.3d 23, 30-31 (1st Cir. 2004), and cases cited; *Whitacre Partnership* v. *Biosignia, Inc.,* 358 N.C. 1, 38 (2004). Where, as here, application of judicial estoppel has resulted in the entry of summary judgment, abuse of discretion remains the appropriate standard — if the judge has not abused his or her discretion in invoking the doctrine of judicial estoppel, the doctrine bars the claim in question, making summary judgment appropriate. See *Alternative Sys. Concepts, Inc.* v. *Synopsys, Inc., supra* at 31-32, and cases cited; *Whitacre Partnership* v. *Biosignia, Inc., supra* at 38-39.

Because of its equitable nature, the "circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation of principle." *New Hampshire* v. *Maine, supra* at 750, quoting *Allen* v. *Zurich Ins. Co.,* 667 F.2d 1162, 1166 (4th Cir. 1982). However, two fundamental elements are widely recognized as comprising the core of a claim of judicial estoppel. First, the position being asserted in the litigation must be "directly inconsistent," meaning

"mutually exclusive" of, the position asserted in a prior proceeding. *Alternative Sys. Concepts, Inc.* v. *Synopsys, Inc.,* *supra* at 33, and cases cited. See *New Hampshire* v. *Maine, supra* at 750 (current position must be "clearly inconsistent" with prior position). We have rejected claims of judicial estoppel where the position being asserted is not directly contrary to the position previously asserted. See *Canavan's Case, supra* at 308-309; *Paixao* v. *Paixao,* 429 Mass. 307, 311 (1999); *Blanchette* v. *School Comm. of Westwood, supra* at 184-185. Second, the party must have succeeded in convincing the court to accept its prior position. *Alternative Sys. Concepts, Inc.* v. *Synopsys, Inc.,* *supra,* and cases cited. Where the court has found in favor of that party's position in the prior proceeding, "judicial acceptance of an inconsistent position in a later proceeding would create 'the perception that either the first or the second court was misled.' " *New Hampshire* v. *Maine, supra* at 750, quoting *Edwards* v. *Aetna Life Ins. Co.,* 690 F.2d 595, 599 (6th Cir. 1982). See *East Cambridge Sav. Bank* v. *Wheeler, supra* at 623 (judicial estoppel not applicable where party did not achieve success in prior proceeding). See also *Fay* v. *Federal Nat'l Mtge. Ass'n, supra* at 788.

Some courts have also recognized a third factor, namely, "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *New Hampshire* v. *Maine, supra* at 751, and cases cited. However, as a practical matter, where the first two components have been satisfied, this third factor is virtually certain to be present, as judicial acceptance of a party's position will ordinarily redound to the benefit of that party. "[A]fter all, it is unlikely that a party will advance a particular position unless that position benefits its cause." *Alternative Sys. Concepts, Inc.* v. *Synopsys, Inc., supra* at 33. Without the need to give separate consideration to whether a party has obtained some unfair benefit or imposed an unfair detriment on another party, judicial estoppel will normally be appropriate whenever "a party has adopted one position, secured a favorable decision, and then taken a contradictory position in search of legal advantage." *InterGen N.V.* v. *Grina,* 344 F.3d 134, 144 (1st Cir. 2003).

Notwithstanding that general articulation of the doctrine, there may arise certain instances where the party's prior position was asserted in good faith, and where the circumstances provide a legitimate reason — other than sheer tactical gain — for the subsequent change in that party's position. For example, "it may be appropriate to resist application of judicial estoppel 'when a party's prior position was based on inadvertence or mistake,' " *New Hampshire* v. *Maine, supra* at 753, quoting *John S. Clark Co.* v. *Faggert & Frieden, P.C.*, 65 F.3d 26, 29 (4th Cir. 1995), or where "the position adopted in the first suit was clearly wrong yet had been advanced in good faith by the party now sought to be estopped," *Chaveriat* v. *Williams Pipe Line Co.*, 11 F.3d 1420, 1428 (7th Cir. 1993). Strict application of the doctrine might not be called for if "the new, inconsistent position is the product of information neither known nor readily available to [the party] at the time the initial position was taken." *Alternative Sys. Concepts, Inc.* v. *Synopsys, Inc., supra* at 35. Again, judicial estoppel is an equitable doctrine, calling for the exercise of discretion in its application to particular facts. Like other courts that have grappled with the "hazy" contours of the doctrine, *id.* at 33, we decline to construct a categorical list of requirements or to delineate each and every possible exception. Rather, judges should use their discretion, and their weighing of the equities, and apply judicial estoppel where appropriate to serve its over-all purpose. That purpose is "to safeguard the integrity of the courts by preventing parties from improperly manipulating the machinery of the judicial system," and judicial estoppel may therefore be applied "when a litigant is 'playing fast and loose with the courts.' " *Id.*, quoting *Patriot Cinemas, Inc.* v. *General Cinema Corp.*, 834 F.2d 208, 212 (1st Cir. 1987).

The present case fits squarely within the doctrine of judicial estoppel as customarily applied. Central to Otis's present claims is an assertion that is diametrically contrary to the position he took in his original suit against Cusick. In that earlier suit, Otis took the position that he was not negligent, based on the factual assertion that he had yielded the right of way when he and O'Malley stopped a few feet shy of the dividing center line of the highway. That position was successful, as the jury found no

comparative negligence on Otis's part, and thus awarded him the full amount of damages for his injuries. In the present suit, however, he contends not only that he was negligent, but that his negligence was even greater than Cusick's, such that it should have operated to deny him any recovery against Cusick. The factual premise now advanced in support of that comparative negligence theory is directly contrary to the facts Otis put forward in the prior suit — Otis now contends that he and O'Malley had crossed several feet over the dividing center line and stopped in the direct path of an oncoming vehicle.

Otis has also changed position on an evidentiary argument raised in the first case. In the prior proceeding, he argued successfully in opposition to Cusick's motion for a new trial that the judge had committed no error in allowing a witness to testify about Cusick's running over O'Malley as he fled the scene. Now, in connection with claims stemming from the defendants' failure to pursue an appeal on behalf of Cusick, Otis claims not only that it was error to have admitted such testimony, but that the prejudicial nature of that testimony was such that its admission amounted to reversible error. He thus claims that an appeal from the judgment that had entered in his favor would have resulted in a reversal and a new trial, and that a competently conducted defense would have resulted in a verdict in favor of Cusick.

In short, Otis's position in the present suit is that he should not have recovered anything in the first suit. This is the classic posture in which courts invoke judicial estoppel: allowing the present case to proceed would "create[] the appearance that either the first court has been misled or the second court will be misled, thus raising the specter of inconsistent determinations and endangering the integrity of the judicial process." *Alternative Sys. Concepts, Inc.* v. *Synopsys, Inc.*, 374 F.3d 23, 33 (1st Cir. 2004). This case does not involve any of the factors that might, on equitable grounds, relieve Otis from the application of judicial estoppel. In the earlier trial, Otis's evidence and jury arguments with respect to the issue of his comparative negligence were not the product of some inadvertent mistake. Nor is his present change in position attributable to some newly

discovered evidence — his present theory of malpractice rests on the assertion that the ostensibly correct version of where the impact occurred was apparent from police reports made available to both counsel prior to trial. Thus, at the time of trial, Otis presented a version of events based on an eyewitness account of the accident, but, now that it suits his purposes to present a different version, he contends that police investigation of the scene substantiates a scenario contrary to that of the eyewitness. Where Otis now seeks to present a version of events different from the version he successfully presented and argued to the jury at the original trial, and where no equitable factors militate against the imposition of judicial estoppel, the judge did not abuse his discretion in applying judicial estoppel to bar Otis's present claims.

Notwithstanding that Otis's present suit fits squarely within the doctrine of judicial estoppel, Otis raises a series of arguments to try to evade the doctrine's reach. Those arguments are unpersuasive. First, Otis contends that the doctrine should not be applied to him because he is bringing the present suit as an assignee of Cusick, and therefore presenting Cusick's claims, not his own. The assignment of Cusick's claims to Otis does not change the fact that the present suit is being brought by Otis himself in his own name. See Restatement (Second) of Contracts § 336 (4) and comment h (1981) ("conduct of the assignee or his agents may, like that of any obligee, give rise to defenses and claims which may be asserted against him by the obligor"). The equitable doctrine of judicial estoppel, based on the need to preserve the integrity and appearance of the judicial system itself, is not affected by how a party came to possess the claims now being brought. The issue is whether Otis is asserting a position inconsistent with a position previously and successfully asserted. That it is an assignment that now makes it beneficial for him to change position does not ameliorate the harm to the judicial system posed by such conduct. See *Alcman Servs. Corp. v. Samuel H. Bullock, P.C.*, 925 F. Supp. 252, 257-258 (D.N.J. 1996), aff'd, 124 F.3d 185 (3d Cir. 1997) (judicial estoppel barred previously prevailing plaintiff from pursuing malpractice

claim as assignee against former defendant's attorney).[8] Assuming (without deciding) that a party's status as assignee might properly be considered as an equitable factor in assessing whether to apply judicial estoppel, a party's status as assignee does not automatically make it an abuse of discretion for a judge to apply the doctrine. In light of the purpose of judicial estoppel, "we are not prepared to say that an assignee is always free to take in that capacity positions that he would be estopped from taking in his personal capacity." *Franco* v. *Selective Ins. Co.*, 184 F.3d 4, 9 (1st Cir. 1999).

Otis next contends that judicial estoppel should not be applied to him because he made no inconsistent statement under oath concerning where he was in the roadway at the moment of impact. Arguments about where he had been in relation to the center line of the highway were made by his counsel, based solely on another witness's testimony.[9] Some courts have identified protection of the oath itself as one of the purposes of judicial estoppel. See, e.g., *Bates* v. *Long Island R.R.*, 997 F.2d 1028, 1037-1038 (2d Cir.), cert. denied, 510 U.S. 992 (1993); *Konstantinidis* v. *Chen*, 626 F.2d 933, 937 (D.C. Cir. 1980). See also *Paixao* v. *Paixao*, 429 Mass. 307, 309, 311 (1999). Others list prerequisites for the application of judicial estoppel, requiring that the inconsistent position have been articulated under oath in the prior proceeding. See, e.g., *Parker* v. *Wendy's Int'l, Inc.*, 365 F.3d 1268, 1271 (11th Cir. 2004), quoting *Burnes* v. *Pemco Aeroplex, Inc.*, 291 F.3d 1282, 1285 (11th Cir. 2002). Cf. *Valentine-Johnson* v. *Roche*, 386 F.3d 800, 811, 812 (6th Cir. 2004) (while normally requiring that contrary position be taken "under oath," position taken in written motion and oral argument "may be fairly analogized to taking a position 'under oath' for the purposes of judicial estoppel"). In our view, protec-

---

[8]Otis contends that this court has disapproved of *Alcman Servs. Corp.* v. *Samuel H. Bullock, P.C.*, 925 F. Supp. 252, 257-258 (D.N.J. 1996), aff'd, 124 F.3d 185 (3d Cir. 1997). See *New Hampshire Ins. Co.* v. *McCann*, 429 Mass. 202, 208 (1999). In that case, we criticized the Federal court's resolution of a different issue, not the application of judicial estoppel to the specific facts. Otis's theory that *New Hampshire Ins. Co.* v. *McCann, supra*, precludes the application of judicial estoppel is discussed *infra*.

[9]Otis's injuries were such that he had no memory of the accident itself; thus, he did not testify as to how the accident occurred.

tion of the oath is not the sole purpose of the doctrine of judicial estoppel, which applies more generally to the pursuit of an inconsistent "position," including an inconsistent "position" taken by that party's attorney without the party's adopting that "position" in sworn testimony. See, e.g., *New Hampshire* v. *Maine*, 532 U.S. 742, 751-755 (2001) (where New Hampshire had proposed and agreed to consent judgment interpreting Colonial decree establishing boundary, judicial estoppel precluded State from asserting contrary interpretation of same Colonial decree in later litigation); *Alternative Sys. Concepts, Inc.* v. *Synopsys, Inc.*, 374 F.3d 23, 34 (1st Cir. 2004) (judicial estoppel applied to inconsistent characterization of claim for purposes of avoiding Statute of Frauds defense). See also *Tinkham* v. *Jenny Craig, Inc.*, 45 Mass. App. Ct. 567, 574-575 (1998) (judicial estoppel based on counsel's representations about amount in controversy made in support of motion to remand case to State court). While a party's "position" in a case will often be supported by that party's testimony under oath, a renunciation of testimony given under oath is not the sine qua non of judicial estoppel. Again, the broader purpose of the doctrine is to protect the integrity of the judicial system, and parties who play "fast and loose" with that system by means of any device, be it testimony under oath or arguments asserted by their counsel, may be subject to judicial estoppel.

Otis next argues that we have rejected the concept of judicial estoppel as it applies to the assignment of malpractice claims. See *New Hampshire Ins. Co.* v. *McCann*, 429 Mass. 202, 209-211 (1999). In that case, this court was asked to declare all assignments of legal malpractice claims void as against public policy. We declined to do so. *Id.* at 209. Recognizing that public policy might be implicated in certain circumstances, we opted to treat the enforceability of such assignments on a case-by-case basis. *Id.* at 209-210. The public policy impediments to such assignments (including judicial estoppel) would not be applicable in all cases, and did not justify a total prohibition against the assignment of legal malpractice claims. *Id.* at 211. In that case, for example, the assigned malpractice claim involved alleged mishandling of settlement documentation — the merits of the underlying controversy in the prior litigation were "irrelevant"

to that claim of malpractice, and thus did not involve any "distasteful role reversal which would demean and reduce the public's confidence in the legal process." *Id.* Rather than declare all assignments of malpractice claims unenforceable, we concluded that such claims could be assigned "unless some clear rule of law or professional responsibility, or some matter of public policy, necessitates that the assignment should not be enforced." *Id.* at 209-210. Nothing in *New Hampshire Ins. Co.* v. *McCann, supra,* precludes a judge from determining that, on the specific facts presented, enforcement of that particular assigned malpractice claim would run afoul of the doctrine of judicial estoppel.

Otis similarly contends that *Meyer* v. *Wagner,* 429 Mass. 410, 420 (1999), precludes the application of judicial estoppel to claims of legal malpractice. In that case, the plaintiff sued her own attorney, contending that he had committed malpractice in representing her in her divorce proceedings. *Id.* at 411. This court held that judicial estoppel did not bar the plaintiff's malpractice claim, where the essence of her claim was that the positions taken during the divorce proceedings were themselves the product of her attorney's malpractice. *Id.* at 420. Applied to the present case, this means merely that judicial estoppel would not bar Cusick from suing his attorney for malpractice in connection with his defense. As to Otis, however, *Meyer* v. *Wagner, supra,* has no bearing on whether judicial estoppel should operate to bar his claims. Otis has made no claim that the positions he took in the prior litigation were the product of his attorney's malpractice. To the contrary, the positions taken by Otis's attorney succeeded in obtaining a multi-million dollar verdict in Otis's favor.[10]

Finally, Otis asserts that the imposition of judicial estoppel on these facts elevates form over substance as, he contends, he could lawfully obtain the benefit of Cusick's claims by means of a slight variation in his agreement with Cusick. For example, an agreement could have been structured whereby Cusick would pursue his own claims against the defendants and assign the proceeds to Otis. Otis contends that the present arrangement (by which he brings the claims himself as Cusick's assignee) merely

[10]Otis is represented by that same attorney in the present litigation.

accomplishes the same permissible result by a different method. The defendants contend that other agreements by which Otis would benefit from the pursuit of Cusick's claims would also implicate judicial estoppel, which, they argue, should be analyzed with regard to the real party in interest.

We need not consider whether or how judicial estoppel might apply to other litigation undertaken pursuant to other hypothetical agreements. We are concerned solely with the litigation presently before us. By that litigation, Otis seeks to recover a verdict in his favor — and in his name — that is mutually inconsistent with the judgment he already has obtained. Judicial estoppel is designed to apply to such an unseemly scenario, without regard to whether an equivalent recovery could be achieved by some other tactic. To Otis's argument that we should be more concerned with substance than with form, we respond with the observation that judicial estoppel is meant to preserve the appearance of the judicial system in the public eye. In that sense, appearances do matter, and judicial estoppel is a doctrine that expressly cares about "form." It may be, as Otis now contends, that he is completely undeserving of the verdict that the jury awarded him in the prior litigation. Yet, in various circumstances (e.g., if Cusick were solvent, or had far greater insurance coverage), the judicial system would still allow Otis to recover on that undeserved judgment. What the judicial system cannot tolerate, however, is Otis himself being the one to claim in court that he is completely undeserving of that judgment, and, by succeeding on such a claim, to collect on the undeserved judgment. Allowing Otis to pursue such a claim in his own name would tarnish the court's reputation. Judicial estoppel is properly invoked to bar such a claim, even if Otis could collect on the judgment through other lawful means.

*Judgment affirmed.*