Tuttman, Kathe M., J.
This dispute arises out of a written agreement by which the plaintiff, Carlos Castillo (“Castillo”), was to purchase the Galaxia nightclub in Lawrence, Massachusetts from the defendants, Juan Pascual (“Pascual”) and Galaxia, Inc. (“Galaxia”).[1] After the deal failed, Castillo sued Pascual and Galaxia. In his second amended complaint, Castillo alleges Breach of Fiduciary Duiy between partners (Count II); Breach of Fiduciary Duty between joint venturers (Count III); Breach of Contract (Count IV); Contempt of Court (Count V); and Unfair Trade Practices pursuant to G.L.c. 93A, §11 against both defendants. He seeks damages as well as a declaratory judgment regarding the terms of an option to purchase (Count VII) and specific performance on a contract for the sale of the property (Count IX). Additionally, he seeks damages against Pascual individually on claims of Assault (Count I) and Perjury (Count VI).
This matter came before the Court for hearing on Castillo’s motion for partial summary judgment and *397 the defendants’ cross motion for summary judgment. Castillo claims that the written agreement for the purchase of the business is void and unenforceable because the option clause does not specify a purchase price. He seeks rescission of the contract and a refund of his $50,000.00 deposit. Relying on the doctrine of judicial estoppel, the defendants oppose Castillo’s motion. In addition, they seek summary judgment on all counts of the complaint and on Count IV of their counterclaim for declaratory judgment regarding the terms of the agreement. Because I find that there was a valid, binding option contract between the parties, as more fully discussed below, the plaintiffs motion for partial summary judgment is DENIED. The defendants’ cross motion for summary judgment is ALLOWED as to Count v. of the complaint, alleging contempt. Because genuine questions of material fact exist regarding the remaining counts of the complaint as well as Count IV of the counterclaim, the defendants’ cross motion for summary judgment is DENIED as to those counts.
BACKGROUND
The Agreement
The following facts relating to the agreement executed by the parties are undisputed. On February 6, 2004, Castillo and the defendants entered into a written agreement entitled “Letter of Intent to Purchase Real Estate and Business and Operation of Business” (“Letter of Intent”) whereby Castillo would purchase the real property (from Pascual) and business assets (from Galaxia) of the Galaxia nightclub located at 9-17 Appleton Street in Lawrence, Massachusetts (collectively, “the business”). The relevant terms of the Letter of Intent for purposes of the summary judgment motions are as follows:
The full purchase price of $650,000.00 would be paid on the closing date:
The closing would take place no later than May 6, 2004 at 11:00 a.m.;
Castillo’s obligation to purchase was contingent upon his obtaining certain licenses to operate the business as a nightclub as well as financing, and delivery of marketable title by the defendants;
The sale was further contingent upon the completion of due diligence by Castillo within ninety days and the cooperation of the seller in conducting due diligence, including providing reasonably requested documents;
An additional $50,000.00 was paid when the agreement was executed on February 6, 2004 as a nonrefundable “option to purchase.” Should Castillo be unable to obtain financing prior to May 6, 2004, he would retain an option to purchase until February 5, 2005;
The option clause provides that: “[t]he parties agree to negotiate in good faith throughout the option period for the purchase of the real property and the business assets at a price to be determined;”
Upon Castillo’s payment of the non-refundable $50,000.00 for the “option to purchase,” Castillo would receive 50% of all net proceeds from the operation of the business;[2]
If the closing did not take place by the May 6 deadline, Castillo and the defendants would continue their arrangement for the sharing of the net proceeds of the nightclub for up to a period of one year expiring on February 5, 2005;
Prior to the expiration of the ninety-day due diligence period, Castillo could cancel the agreement upon written notice, and if he failed to obtain financing by February 5, 2005, all obligations of the parties under the agreement would cease; however, the $50,000.00 payment was non-refundable under any circumstances.
Dealings Between the Parties
The following facts relating to the course of dealing between Castillo and the defendants, summarized from the summary judgment record, are either undisputed or if disputed, are construed in the light most favorable to Castillo as the non-moving party.[3]
Prior to the execution of the Letter of Intent on February 6, 2004, the parties, through counsel, engaged in ongoing negotiations regarding its terms. The closing did not take place on May 6. Castillo had not obtained financing.
By May 20, 2004, Castillo had still not obtained financing. In an e-mail from defendant’s counsel to Castillo’s counsel dated May 20, the defendants offered to sell Castillo the business at a price of $725,000.00. Castillo did not accept this offer.
On or about July 24, 2004, an incident occurred at the Galaxia nightclub where Pascual is alleged to have forcefully shoved the cash register off the counter in the direction of the plaintiff.
On or about September 7, 2004, Pascual filed an affidavit with the Court containing allegedly false testimony regarding the accounting processes of the business.
On February 2, 2005, Castillo, through counsel, sent a letter to the defendants demanding execution of the option to purchase the business at a price of $650,000.00. The defendants did not respond to this letter.
On May 12, 2005, the defendants sold the business to another purchaser.
Castillo received between $25,000 and $29,000 in cash and $9,697.57 in checks from the business’s proceeds between February 8, 2004 and February 5, 2005.
*398 DISCUSSION
Standard of Review
Summary judgment shall be granted when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat'l Bank v. Dawes, 369 Mass. 550 (1976). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). The moving party may satisfy this burden either by submitting affirmative evidence that negates an essential element of the opposing party’s case or by demonstrating that the opposing party has no reasonable expectation of proving an essential element of his case at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). Once the moving party establishes the absence of a triable issue, the party opposing the motion must respond with evidence of specific facts establishing the existence of a genuine dispute. Pederson, 404 Mass. at 17. An adverse party may not defeat a motion for summary judgment by resting merely on the allegations and denials of its pleadings, but must set forth specific facts with affidavits, deposition testimony, answers to interrogatories, or admissions on file showing that there is a genuine issue for trial. Mass.R.Civ.P. 56(e). When reviewing amotion for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party, drawing all permissible inferences in his or her favor. Douillard v. LMR, Inc., 433 Mass. 162, 163 (2001).
Plaintiffs Motion for Partial Summary Judgment Judicial Estoppel
In all prior phases of this litigation, the plaintiff has premised some of his claims on an assertion that the option clause of the Letter of Intent is valid and enforceable as a binding contract. Because the plaintiff has now adopted a contrary position, asserting that the option clause is unenforceable, the defendants urge this Court to find that the doctrine of judicial estoppel bars the plaintiffs argument on summary judgment.
The “purpose [of the judicial estoppel doctrine] is to safeguard the integrity of the courts by preventing parties from improperly manipulating the machinery of the judicial system . . .’ ” Otis v. Arbella Mutual Insurance Co., 443 Mass. 634, 642 (2005), quoting Alternative Sys. Concepts, Inc. v. Synopsys, Inc., 374 F.3d 23, 33 (1st Cir. 2004). Judicial estoppel maybe imposed in a judge’s discretion where (1) the position a party asserts is inconsistent with his prior position; and (2) where the court has found in favor of the party’s position in a prior proceeding. Otis v. Arbella Mutual 443 Mass. at 640-42. The defendants argue that the second requirement is satisfied here by the plaintiffs reliance on the existence of a binding option contract to secure pre-trial injunctive relief. In fact, in seeking injunctive relief, the plaintiff relied primarily on the clause of the Letter of Intent entitling him to fifty percent of the business’s net proceeds over a one-year time period to assert both likelihood of success on the merits of his claims and irreparable harm.[4] I do not find that the plaintiffs present position is entirely inconsistent with his prior position, nor that the plaintiff is intentionally engaging in an attempted manipulation of the judicial process, and therefore, in the exercise of my discretion, I decline to apply judicial estoppel in this case.
The Option Clause
The option clause in the Letter of Intent provided that: “(t]he parties agree to negotiate in good faith throughout the option period [until February 5, 2005] for the purchase of the real property and the business assets at a price to be determined.” Relying on the holding of Lucey v. Hero International Corp., 361 Mass. 569 (1972), the plaintiff argues that the absence of a definite purchase price makes the option clause void and unenforceable. Interpreting the written option is a question of law for the court. Shayeb v. Holland, 321 Mass. 429, 431 (1947) (citations omitted); Lexington Insurance Co. v. All Regions Chem. Labs, 419 Mass. 712, 713 (1995).
It is axiomatic that price is an essential element of a contract for the sale of property. Shayeb, 321 Mass. at 433. Furthermore, the option clause of the contract fails to specify an actual price or, alternatively, to specify a formula for arriving at a price. See Lafayette Place Associates v. Boston Redevelopment Authority, 427 Mass. 509, 518-19 (1998). Nevertheless, the option clause is enforceable. The holding of Lucey is not controlling. In that case, the buyer purchased a certain parcel of land from the seller. The parties also executed a written option to purchase additional land at a specified price per acre; however, the boundaries of the additional land were to be “mutually agreed upon by both parties.” The court found that the option was not sufficiently definite to be specifically enforced, because “[t]he location of the parcel subject to the option was left open for future agreement.” Lucey, 361 Mass. at 574.
In the present case, the price, not a description of the properly, is the unspecified term, and the holding of Shayeb, 321 Mass. 429, dictates the outcome. The facts of Shayeb are remarkably similar. There, the plaintiff leased property from the defendant for a period of ten years. An option clause in the lease provided that “the lessee at his option shall be entitled to the privilege of purchasing the aforesaid land and buildings.” Shayeb, 321 Mass. at 430. The lease also gave the lessee the right to sublet and to make improvements on the premises. Id. The option did not specify a price or a time frame for its execution. The court held: “A contract leaving the price of the land to *399 a future agreement between the parties would be indefinite and incomplete and could not be enforced (citations omitted). It is true that the option in question does not in terms provide for the determination of the price by any subsequent agreement. We think that the offer to sell in the present case should be reasonably understood to be an offer to sell for a fair and reasonable price (emphasis supplied). Otherwise, the offer would have no practicable value but would be a mere illusion or perhaps a snare to the unwary.” Shayeb, 321 Mass. at 432. The language of the option in the present case is slightly different from that in Shayeb; it provides that the parties will negotiate in good faith to determine a price. Nevertheless, the option was a material term of the agreement, and one that may well have provided an incentive to the plaintiff to enter into the contract in the first place. See Shayeb, 321 Mass. at 431. It was also secured by substantial consideration. When parties have progressed beyond the stage of negotiation and have formalized their agreement, “a contract should be interpreted ‘so as to make it a valid and enforceable undertaking rather than one of no force and effect.’ ” Lafayette Place Associates, 427 Mass. at 509, quoting Shayeb, 321 Mass. at 432. The circumstances here warrant an inference that the agreement contemplated a “fair and reasonable price,” particularly in light of the history of dealing between these parties. Summary judgment for the plaintiff must therefore be denied on the theory that the option clause of the Letter of Intent is unenforceable.
III. Defendant’s Cross Motion for Summary Judgment
A. Contempt Claim (Count V)
The plaintiffs contempt claim (Count v. of the Second Amended Complaint) relates to allegations that the defendants failed to comply with a preliminary injunction issued against them at the commencement of the litigation, ordering them, inter alia, to continue paying proceeds from the business’s operations to the plaintiff. The plaintiffs separate Complaint for Contempt, filed on January 18, 2005, was heard before another justice of this court (McIntyre, J.) and dismissed on February 1, 2005. Because that complaint was premised upon the same allegations supporting Count v. for contempt in the Second Amended Complaint, summary judgment is appropriate as to Count V.
B.Counts I, II, II, IV, VI, VII, VIII and IX
The summary judgment record establishes that genuine questions of material fact exist regarding each remaining factual allegation in the plaintiffs complaint: whether an assault occurred, whether Pascual committed perjury, and whether there was a breach of contract and of fiduciary duty by the defendants. Furthermore, the plaintiffs c. 93A claim and the request for declaratory judgment necessarily depend on factual resolution of the underlying allegations of breach of contract and of fiduciary duty. Thus, summary judgment must be denied as to these counts of the complaint.
C.Count IV of the Counterclaim
In Count IV of their counterclaim, the defendants seek a declaratory judgment that the terms of the Letter of Intent gave the plaintiff a right to exercise the option to purchase the property “at a price to be determined,” not at the price of $650,000.00 offered by the plaintiff on February 2, 2005. In light of this Court’s finding, supra, that the Letter of Intent must be interpreted to premise the exercise of the option on a “fair and reasonable price,” summary judgment is not appropriate as to Count IV of the defendants’ counterclaim.
ORDER for JUDGMENT
For the foregoing reasons, the plaintiffs motion for partial summary judgment is DENIED. The defendants’ cross motion for summary judgment is ALLOWED as to Count v. of the Second Amended Complaint (Contempt), and DENIED as to all other counts of the Second Amended Complaint and as to Count IV of the counterclaim (Declaratory Judgment). Count v. of the Second Amended Complaint is hereby DISMISSED, and judgment shall enter for the defendants as to that count only.

 Collectively, “the defendants.”

The net proceeds would be calculated based on “the total amount of sale generated by the nightclub including entrance fees and bar sales (but excluding rental income) minus the usual and customary expenses incurred for the operation of the nightclub, including but not limited to, liquor and employee expenses.”

The disputed facts are relevant only in connection with the defendants’ cross-motion for summary judgment.

Plaintiff s Motion for Preliminary Injunction dated September 1, 2004 (Exhibit 2 to defendants’ Memorandum in Opposition to Plaintiffs Motion for Summary Judgment).