McCann, John S., J.
The plaintiff, Stephen J. Hanlon (“Hanlon”), originally brought this action as the assignee of the rights of the plaintiff Becky J. Sandman (“Sandman”). Count I of the complaint is a legal malpractice claim against defendant Matthew McGrath (“McGrath”). Count II alleges that defendant Massachusetts Homeland Insurance Company (“Homeland”) violated the contractual duty to defend an insured. Count III alleges that Homeland violated G.L.c. 176D, §3(9) and G.L.c. 93A, §§2 and 9. The complaint was subsequently amended to substitute Sandman for Hanlon as the party plaintiff after Homeland moved to dismiss Hanlon’s complaint. Once Sandman was substituted, Homeland’s motion was deemed moot as against Hanlon.
McGrath now moves to dismiss Count I and argues that the claim is barred by judicial estoppel, in violation of public policy, time barred by the tort statute of limitations, and that Sandman lacks standing to bring any claim. Homeland also moves to dismiss Counts II and III claiming that Sandman’s claims are barred by judicial estoppel and that she lacks standing to bring such claims. For the following reasons, the defendants’ Motions to Dismiss are ALLOWED.
BACKGROUND
The following facts are taken from the complaint and the pleadings on the motion, viewed in the light most favorable to the plaintiff. See General Motors *191 Acceptance Corp. v. Abington Cas. Ins. Co., 413 Mass. 583, 584 (1992).
On August 12, 1998, at approximately 8:45 p.m. on Ballard Street in Worcester, Sandman, driving a car, collided with Hanlon, who was operating a motorcycle. Sandman, coming from a bar, attempted to make a left-hand turn but crossed into Hanlon’s lane of travel. He was thrown from the motorcycle and seriously injured.[1] Immediately after the accident, Sandman drove to her mother’s house, although she returned to the scene shortly thereafter. She was criminally charged as a result of the accident.[2]
Hanlon filed suit against Sandman for negligence in the Worcester Superior Court on July 27, 2000 (“Hanlon litigation”). He was represented by Attorneys Michael Wilcox (“Wilcox”) and Louis Aloise (“Aloise”). Hanlon later amended his complaint and included negligence claims against the bar which had served alcohol to Sandman prior to the accident. The bar settled its claims with Hanlon prior to trial.
Homeland hired McGrath, through the law office where he was employed, to represent Sandman, its insured, in the trial. Hanlon’s trial against Sandman began on March 3, 2005. On March 7, 2005, the juiy returned a verdict in favor of Hanlon in the amount of $19,500,000.00 for his personal injuries and in the amount of $51,537.00 for the damage to his motorcycle. The jury also found that Hanlon was 10% comparatively negligent. After Sandman’s attorney McGrath filed post-trial motions, the verdict was reduced by the settlement proceeds from the bar in the amount of $85,000.00, a $500,000.00 remittitur, and by considering Hanlon’s comparative negligence. The final amended judgment awarded to Hanlon was $16,965,000.00 for personal injuries and $46,383.20 for property damages. Sandman, represented by different appellate counsel, appealed the judgment. The Appeals Court affirmed the judgment and the Supreme Judicial Court denied further appellate review on January 31, 2008.
DISCUSSION
This Court allows the motions to dismiss on the basis of the discretionary doctrine of judicial estoppel. Judicial estoppel or “preclusion of inconsistent positions” is an equitable and discretionary doctrine which precludes a party from asserting a position in one legal proceeding which is contrary to a position the party successfully asserted in an earlier proceeding. Fay v. Fed’l Nat’l Mortgage Ass’n, 419 Mass. 782, 787 (1995). The doctrine “prevent(s) manipulation of the judicial system by the litigants.” Otis v. Arbella Mutual Ins. Co., 443 Mass. 634, 640, quoting Canavan’s Case, 432 Mass. 304, 208 (2000). Because it is an equitable doctrine, judges need not rely on “inflexible prerequisites or an exhaustive formula” when considering its applicability. New Hampshire v. Maine, 523 U.S. 742, 751 (2001). The Supreme Judicial Court has directed that in deciding whether to apply the doctrine, “judges should use their discretion, . . . and apply judicial estoppel where appropriate to serve its over-all purpose.” Otis, 443 Mass. at 642. The “broader purpose” of judicial estoppel is to “protect the integrity of the judicial system” and prohibit parties from playing “fast and loose with that system by means of any device, be it testimony under oath or arguments asserted by . . . counsel.” Id. at 646.
In order for judicial estoppel to apply, Otis requires that the party asserting application of the equitable remedy establish two fundamental elements. Id. at 640-41. First, the position asserted in this case must be “directly inconsistent,” i.e. “mutually exclusive,” of the position asserted in the prior proceeding. Id., quoting Alternative Sys. Concepts, Inc. v. Synopsys, Inc., 374 F.3d 23, 33 (1st. Cir. 2004). Second, the party must have succeeded in convincing another court to accept the prior position. Id.
Although the Supreme Judicial Court in Otis stated that “judicial estoppel would not bar [the losing defendant] from suing his own attorney for malpractice in connection with his defense,” this case can be distinguished from the situation envisioned by the Otis Court dictum because this complaint was brought initially by Hanlon, represented again by Wilcox and Aloise. Despite Sandman’s arguments to the contrary, simply because the attorneys now represent Sandman as the named plaintiff does not ease this court’s discomfort that her case is not merely a malpractice action, but is instead an attempt “to transform [a] leaden judgment against an impecunious adversary into claims of gold against the adversaiys’ well-insured lawyer.” Aleman Services Corp. v. Bullock, 925 F.Sup. 252, 252 (D.N.J. 1996) (holding that plaintiff was judically estopped from pursuing assigned malpractice claim against former adversary’s lawyer after representing to court that the adversary’s debt to plaintiff constituted the full and true amount of the default judgment). The necessity for the party substitution illustrates the purpose of the current litigation: to recover a judgment against McGrath and Homeland in favor of Sandman so that she can pay the judgment owed to Hanlon. Therefore, this Court begins with the premise than Hanlon, rather than Sandman, is the real parly in interest.
Hanlon’s position in the prior litigation was that he was owed a significant monetary judgment due to the severity of his injuries and to Sandman’s negligence. This position resulted in a multi-million-dollar jury verdict in his favor which was affirmed on appeal. Therefore, his prior position, by any measure, was successful. His position in the current litigation is that he did not deserve the verdict, but rather, that the large verdict was due to McGrath’s legal malpractice and the actions of Homeland. This position is directly inconsistent with his prior successful position in the Hanlon litigation.
*192 The Supreme Judicial Court has repeatedly admonished that the purpose of judicial estoppel is to protect the integrity of the judicial system by ensuring public confidence in the accuracy of court judgments. See id. at 643-44; East Cambridge Savings Bank v. Wheeler, 422 Mass. 621, 623 (1996). Allowing Sandman’s case, for Hanlon’s benefit, to proceed against McGrath and Homeland may “create the appearance that either the first court has been misled or the second court will be misled.” Otis, at 643, quoting Alternative Sys. Concepts, Inc., 374 F.3d at 33. Because a legal malpractice case necessarily requires “a trial within a trial,” see, e.g., Fishman v. Brooks, 396 Mass. 643, 647 (1986), and would require a jury to rehash the Hanlon litigation, a verdict against McGrath and Homeland may create the impression that the jury in the Hanlon litigation was misled. Therefore, because a malpractice trial would lead to a “mutually inconsistent” result and because Hanlon was successful in the first litigation, Sandman’s claims against McGrath and Homeland are barred by the doctrine of judicial estoppel.
ORDER
It is hereby ORDERED that the Defendants’ Motions to Dismiss are ALLOWED.

Among other injunes, Hanlon sustained a closed head trauma, a collapsed lung, a skull fracture and nineteen other fractures. Immediately following the accident, Hanlon underwent nine hours of surgery and was in a coma for twenty days. When he regained consciousness, he suffered from cognitive impairment and was unable to walk or talk. He remained in the hospital for one month. He lived in a rehabilitation center for two and one half months and lived with his parents for two months before returning to the apartment where he lived before the accident. As a result of the surgeries, Hanlon has significant scarring over much of his body. His physical and cognitive limitations have had a serious impact on his quality of life since the accident.

In her criminal trial, Sandman pled guilty to a second offense of Operating under the Influence and served eighteen months in the House of Corrections.