NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case.  A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-866

JAMES C. MAZAREAS

vs.

PETER MAZAREAS[1] & another.[2]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

This case is part of the unfortunate and long-running interfamily conflict about the estates of Fotios Mazareas and Stavroula Mazareas.  This dispute involves a two-family house at 37 Lake Avenue in Lynn that was held by Fotios.[3]

Background.  Fotios died testate on November 23, 2010, leaving, among other things, the two-family home in a testamentary trust for the lifetime benefit of his wife

_____

[1] Individually, as personal representative of the estate of Fotios Mazareas, and as trustee of the testamentary trust created under the will of Fotios Mazareas dated November 19, 2010.

[2] James Mazareas.

[3] Because the parties share a last name, as do some of the other individuals involved in this case, we will refer to them by their first names.

Stavroula, with the remainder to his and Stavroula's six grandchildren. The plaintiff, James C. Mazareas (Jamie), is one of the grandchildren of Fotios and Stavroula. Stavroula died on May 27, 2014. Fotios's and Stavroula's son Peter -- Jamie's uncle -- is trustee of the testamentary trust, which granted Peter the power to sell the subject property at public or private sale without order or license from any court.

There was extensive litigation in the Essex County Probate and Family Court following the deaths of Fotios and Stavroula. The litigation was between Peter and his brother James Mazareas (Jim), who is Jamie's father. Peter and Jim purported to settle this litigation on May 2, 2015, by way of a handwritten agreement. That agreement provided, "Jamie will have [the] option to purchase 37 Lake Ave for the amount of $301,000. If Jamie does not exercise this option by May 4, 2015, Jim shall allow the sale to current purchaser, and will sign all releases and withdraw all legal challenges."

On Monday, May 4, 2015, at 10:14 A.M., Jim sent an e-mail message to Peter saying, "Peter[,] Jamie wants to purchase 37 Lake [A]ve. [W]ill get you a P & S[.] [J]im." Peter responded shortly after, saying, "Good. Send it as soon as possible. We need to execute it by Wednesday [A.M.] or we will lose the other buyer." Jim replied, "I will get it done ASAP."

2

Later that afternoon, Jim e-mailed a proposed purchase and sale agreement to Peter. It accurately identified the parties, the property, and the purchase price, but contained numerous provisions not set forth in the sparse option language of the May 2, 2015, agreement, including providing, as credits to Jamie against the purchase price, monies to be paid to Jim and Jamie. The purchase and sale agreement was not signed by any of the parties.

Two days later, after Jamie's attorney got in touch with Peter's attorney, Peter wrote to Jim asking why Jamie had engaged an attorney and asking for confirmation that Jamie intended to purchase the subject property. Peter wrote that if Jamie "wants to proceed with the purchase he needs to send a statement today to that effect and speak for himself." Jim responded asking Peter to have his counsel contact Jim's counsel. In another e-mail message, Jim explained, "all beneficiaries including [Jim's and Peter's sister] Helen need to sign off. [Jim's attorney] will explain complexities and potential liabilities for both of us." Peter asked if Jamie was objecting; Jim replied, "no." No sale from Peter to Jamie took place.

Subsequently, much litigation ensued. On May 13, 2015, Peter filed a motion to dismiss the several cases in the Probate

3

and Family Court litigation pursuant to the May 2, 2015, agreement. On the same day, Jim filed an opposition to Peter's motion to dismiss, challenging the enforceability of the May 2, 2015, agreement. On June 25, 2015, Peter filed a motion to enforce the May 2, 2015, agreement that made no reference to the option or whether it had been exercised. On December 29, 2015, a judge of the Probate and Family Court issued an interlocutory order allowing Peter's motion to enforce the agreement, again with no mention of the option or whether it had been exercised. Peter subsequently refused to sell the property to Jamie pursuant to the option contained in the agreement -- Jim sought unsuccessfully to have him held in contempt for failing to do so -- and at a hearing on December 1, 2016, Peter explicitly took the position in one of the cases that he was not obligated to sell the property to Jamie because Jamie had not exercised his option. Jamie was not a party to any of this litigation.[4]

---

[4] In the litigation, the Probate and Family Court judge encouraged Peter and Jim to come to a new agreement. They did so, signing an agreement on December 1, 2016, stating in part "37 Lake Ave will be sold to Jamie for $301,000" (it is not clear from the record that this agreement was in final settlement of any of the then-pending litigation).

Jamie did not argue in the trial court or before us that the December 1, 2016, agreement superseded the May 2, 2015, agreement or that he was entitled to purchase the property under the December 1, 2016, agreement, as a third-party beneficiary or otherwise. Indeed, in his verified complaint he stated, "In the event and to the extent Peter Mazareas seeks to avoid his obligation to the Plaintiff under the May 2, 2015 agreement by

On August 30, 2018, Jamie brought this suit against Peter and Jim in the Superior Court as a third-party beneficiary of the May 2, 2015, agreement. In count one Jamie claimed breach of that agreement by failure to sell the real estate to him, and sought specific performance. In count two, he claimed breach of contract by failures to pay monies due to him under the agreement.

Peter moved to dismiss and for summary judgment. Jamie filed a cross motion for summary judgment. The Superior Court judge allowed in part Jamie's motion, granting summary judgment in his favor with respect to count two, the claim for monies due, and entering judgment on that count in favor of Jamie in the amount of $7,967.50. The judge granted Peter's summary judgment motion in part, concluding there was no genuine issue of material fact; that the May 2, 2015, agreement was an enforceable option contract; and that Jamie failed to exercise his option to purchase the property. She granted summary judgment in Peter's favor regarding the sale of the property. The judge entered an amended judgment that dismissed count one and resolved the remaining claim by dismissing the complaint "as

reason of the December 1, 2016 agreement . . ., the Plaintiff says that the Plaintiff's rights under the May 2, 2015 agreement are unaffected by the December 1, 2016 agreement to which the Plaintiff is not a party." No one has suggested that the December 1, 2016, agreement renders this dispute moot.

it pertains to Defendant James Mazareas."  Jamie appealed with respect to his claim regarding the sale of the property.

Discussion.  We review the grant of summary judgment by the Superior Court judge de novo.  See Matthews v. Ocean Spray Cranberries, Inc., 426 Mass. 122, 123 n.1 (1997).

Jamie argues first that the motion judge erred in concluding that Jamie failed to give notice of his exercise of the option to purchase the property by means of Jim's e-mail message to Peter.  Jamie argues that Jim was acting as his agent in e-mailing Peter in a timely manner to state that Jamie wished to exercise the option.  We may assume, without deciding, that that argument is correct and that the option was in fact successfully exercised by Jamie acting through his agent, Jim.

Two days later, however, Jim asserted in an e-mail message to Peter that Jamie could not go forward with the purchase under the May 2, 2015, agreement unless all beneficiaries -- meaning Fotios's and Stavroula's other five grandchildren as well as Helen -- signed off on the sale.  If Jim was acting as Jamie's agent on May 4, in the absence of any indication of revocation of Jim's authority to do so, we conclude that he was also acting as Jamie's agent on May 6.

Jamie's unwillingness to purchase the property under the option unless an additional condition not included in the May 2,

2015, agreement was met -- indeed one that would have required nonparties to the agreement to enter into separate agreements with him -- was either a revocation of the original exercise of the option accompanied by a counteroffer to Peter, see Moss v. Old Colony Trust Co, 246 Mass. 139, 148 (1923), or a refusal to proceed with the purchase on the terms in the option. This relieved Peter of any obligation to sell Jamie the property under the option contained in the May 2, 2015, agreement.

Jamie argues in the alternative that Peter is judicially estopped from asserting that he need not comply with the option in the May 2, 2015, agreement. Judicial estoppel is "an equitable doctrine that precludes a party from asserting a position in one legal proceeding that is contrary to a position it had previously asserted in another proceeding." Otis v. Arbella Mut. Ins. Co., 443 Mass. 634, 639-640 (2005), quoting Blanchette v. School Comm. of Westwood, 427 Mass. 176, 184 (1998). It is appropriate only where (1) the position being asserted is directly inconsistent with and mutually exclusive of the position asserted in the prior proceeding, and (2) the party succeeded in convincing the court to accept its prior position. Otis, supra at 640-641. Even then, its application is discretionary as, for example, a party's prior position may have been due to inadvertence or mistake. Id. at 642. We therefore

review the question of the refusal to apply judicial estoppel for abuse of discretion.  Spinosa v. Tufts, 98 Mass. App. Ct. 1, 6 (2020).

Jamie contends that Peter's position at summary judgment is directly contrary to the position that he took previously in the Probate and Family Court litigation, which was that Jamie had exercised the option.  Jamie also argues that the court accepted Peter's prior position.  In arguing that Peter is judicially estopped from asserting the option was not exercised, Jamie points to a memorandum of law filed by Peter on June 25, 2015; an affidavit signed by Peter on June 24, 2015; and an argument made by Peter's counsel on July 7, 2015, all of which were part of the Probate and Family Court litigation between Peter and Jim.

To begin with, this all took place in a case between Peter and Jim, not Jamie.  In any event, the memorandum of law was in support of Peter's motion to enforce the May 2, 2015, agreement against Jim, which Jim was then attempting to void, and the ruling on that motion did not resolve whether Jamie had in fact exercised the option in the agreement.  The memorandum of law said, in support of the argument that Jim had acknowledged the validity of the May 2, 2015, agreement, "On Monday, May 4, 2015 -- two days after the Settlement was signed -- [Jim] sent an

8

email to Peter stating that [Jim's] son Jamie would be exercising his option under the Settlement to purchase 37 Lake Avenue."  It did not seek to enforce the option or unequivocally contend that Jamie had already exercised the option.

Peter's affidavit in support of the memorandum stated,

"Because of the provision in the Settlement Agreement that the real estate was to be sold to my nephew Jamie Mazareas ([Jim's] son), and the status of the litigation, I informed the selling broker . . . to inform the buyer [who had signed a purchase and sale agreement for the property] that we would not accept his offer and for [the broker] to return the buyer's deposit."

The affidavit also said, "On the Monday after [Jim] and I signed the Settlement, May 4, 2015, [Jim] sent me an email stating that his son Jamie would be exercising the option to purchase 37 Lake Avenue as provided in the Settlement."  Even if the motion had been successful solely in reliance on these statements -- something we need not address -- these statements do not assert that it was Peter's position that the option had been effectively exercised.

Finally, in the argument by Peter's counsel to which Jamie points, Peter's counsel stated, "Jamie Mazareas said, after the settlement, 'I want to exercise my option.'"  This also was not an unequivocal statement that the option had been properly exercised.

9

Indeed, Peter ultimately took the position in the Probate and Family Court litigation that he was not under an obligation to sell the property to Jamie because Jamie had not exercised the option.  Both before and after Peter explicitly stated that position, Jim repeatedly requested that the Probate and Family Court judge hold Peter in contempt for failing to honor Jamie's purported exercise of the option, and the Probate and Family Court judge repeatedly refused to do so.  In light of this, we cannot properly conclude that it was an abuse of discretion for the Superior Court judge to decline to hold that Peter was judicially estopped from taking the position here that the option had not been exercised.

Conclusion.  The amended judgment is affirmed.  The appellee's request for costs and counsel fees pursuant to Mass. R. A. P. 25, as appearing in 481 Mass. 1654 (2019), is denied.

So ordered.

By the Court (Vuono, Rubin & Walsh, JJ.[5]),

Clerk

Entered:  November 20, 2024.

---

[5] The panelists are listed in order of seniority.