NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

16-P-705                                          Appeals Court


    LORI HOLLAND  vs.  KANTROVITZ & KANTROVITZ LLP & others.[1]


                     No. 16-P-705.

    Suffolk.     January 10, 2017. – August 15, 2017.

       Present:  Grainger, Wolohojian, & Neyman, JJ.[2]


Practice, Civil, Summary judgment.  Attorney at Law,
    Malpractice, Negligence.  Negligence, Attorney at law.
    Limitations, Statute of.  Bankruptcy, Discharge.  Judicial
    Estoppel.


    Civil action commenced in the Superior Court Department on
April 29, 2013.

    The case was heard by Linda E. Giles, J., on a motion for
summary judgment.


    Luke Rosseel for the plaintiff.
    Daniel R. Sonneborn for the defendants.


    WOLOHOJIAN, J.  In September 2009, the plaintiff retained

the defendants as personal injury counsel to represent her with

_____

        [1] The law offices of Martin Kantrovitz, and Martin
Kantrovitz.

        [2] Justice Grainger participated in the deliberation on this
case prior to his retirement.

respect to serious injuries she sustained when she slipped and fell on ice the year before. Approximately one month later, acting pro se, she filed for bankruptcy protection, and received a bankruptcy discharge in early 2010. Thereafter, in 2011, the defendants allowed the statute of limitations on the personal injury claim to expire without filing suit. This legal malpractice suit followed. The question on appeal is whether the plaintiff's malpractice claims were properly dismissed on summary judgment on the ground that the bankruptcy action (or the position the plaintiff took in it) foreclosed them. We reverse.

Reserving additional facts to the analysis that follows, we recite here only the core facts, and do so in the light most favorable to the plaintiff, drawing all reasonable inferences in her favor. See, e.g., Sullivan v. Liberty Mut. Ins. Co., 444 Mass. 34, 38 (2005). On January 15, 2008, the plaintiff, a State employee, was seriously injured when she slipped and fell on ice outside the building in which she worked. The building was owned and/or maintained by a private entity, Northland Investment Corporation. The ice had accumulated because of a defective gutter and had not been salted. The plaintiff's injuries were sufficiently severe that she lost 410 scheduled work days, and even as late as September 2012, she remained unable to work full time.

During the workers' compensation proceedings relating to her injuries, the plaintiff was approached by defendant Martin Kantrovitz's associate, who told her that the defendants would like to represent her. She agreed and, by September 9, 2009, had retained the defendants to represent her as personal injury counsel. The plaintiff alleges that thereafter the defendants paid little, if any, attention to her case, did not meet with her in person, repeatedly failed to respond to her telephone calls, failed to investigate or pursue her claims, and failed to inquire into her financial situation.[3]

Approximately one month after she had retained the defendants as personal injury counsel, the plaintiff, acting pro

---

[3] The plaintiff's claims of inattention are buttressed by various documents that were part of the summary judgment record. For example, Kantrovitz's own internal memoranda indicate that, on June 9, 2010, the plaintiff called and left a voicemail stating, "I need you to settle this case because I[']m going to be homeless. They are selling the house that I'm l[i]ving in right now, and I'm gonna need some money so at least I can get out of there. I don't know how much [yo]u [are] asking, I have no idea about this case. So if you could please contact me . . . ." Kantrovitz did not respond, and the plaintiff called again on June 22, 2010, asking that the case be settled given her housing dilemma. Again, Kantrovitz did not respond. On July 20, 2010, the plaintiff called and again left a voicemail, restating her pressing need for money and asking for information about her case and that it be settled. Again, there appears to have been no response or action by Kantrovitz. Not until December 22, 2010, does the record reflect that Kantrovitz spoke with the plaintiff. Although he noted at that time that "she is under control," he remarked that "[w]e need to get the case in suit ASAP," and noted the need to request medical records. The statute of limitations expired approximately three weeks later, on January 15, 2011.

se, filed for bankruptcy protection in October 2009.  The plaintiff did not inform the defendants of the bankruptcy proceeding, nor did they inquire.[4]  At the same time, the plaintiff did not disclose the personal injury claim in her written filings with the bankruptcy court.  She states that she did not do so because she did not understand that the bankruptcy forms called for that information and, more specifically, that she did not understand the requirement that she disclose "[o]ther contingent and unliquidated claims of every nature" pertained to the personal injury suit she had hired the defendants to pursue.

On November 10, 2009, in response to oral questioning by the bankruptcy trustee at a meeting of creditors, the following exchange took place:

Trustee:  "Does anybody owe you any money?"

Plaintiff:  "Yes."

Trustee:  "Have you been injured in any way --"

Plaintiff:  "Yes."

Trustee:  "-- that you feel you have the right to sue someone?"

Plaintiff:  "Yes."

Trustee:  "What's that?"

---

[4] Supported by the opinion of an expert, the plaintiff contends that the defendants had a duty to inquire into her financial situation and advise her regarding seeking bankruptcy protection.

  Plaintiff: "In 2008, I had fallen in front of 600 Washington Street. I filed workman's comp. I was denied. About a year later, they settled and gave me just sick time bank."

  Trustee: "Does anybody -- aside from that, does anybody owe you any money?"

  Plaintiff: "No."

The parties dispute the import of this exchange. On the one hand, the plaintiff contends that it demonstrates that she disclosed the details of her injury as well as the fact that she believed she "has" (in the present tense) a right to sue someone, thus adequately disclosing the personal injury claim to the bankruptcy trustee. On the other hand, the defendants contend that the trustee's final question sought to determine whether the plaintiff believed anyone "aside from that" owed her money for her injuries and that, when she answered "no," she effectively hid the personal injury claim from the trustee. The plaintiff avers that she did not attempt, or intend, to hide the personal injury claim from the bankruptcy trustee, and that she believed she had adequately disclosed it by providing the details of her fall and stating that she believed she continued to have the right to sue someone. On February 12, 2010, the plaintiff's debts were discharged in bankruptcy.

  Thereafter, the defendants allowed the statute of limitations to expire on January 15, 2011 without filing suit, a

fact they disclosed to the plaintiff by a letter signed by Kantrovitz. It stated as follows:

"Dear Ms. Holland:

I am terribly sorry to inform you that as I was making sure that I had all of your records in order to file a lawsuit, I realized that I let the Statute of Limitations go by. Suit should have been filed before January 15, 2011. . . . I am returning relevant papers and suggesting that you go to another attorney and show him or her this letter and papers and have them do what is necessary. I have malpractice insurance and my company would handle the claim as if you went after the owners of the building where you were injured. You have three (3) years from notice of this information to file suit against me."

This legal malpractice suit followed. While the amended complaint alleges counts for negligence and breach of contract, it does not specify any particular theory of legal malpractice; its factual allegations are limited to the defendants' failure to timely file suit.

By the time of summary judgment, the plaintiff had advanced three more detailed theories of alleged legal malpractice. First, she contended that the defendants failed to engage in meaningful communications prior to her filing the bankruptcy petition and thus did not discover that the plaintiff was in such financial distress that she was considering bankruptcy. The defendants had a duty, she contends, to advise her how bankruptcy would affect her personal injury suit and to advise her whether forgoing filing for bankruptcy altogether, and allowing the defendants to negotiate with her creditors, was in

her best interests in light of the fact that the settlement value of her personal injury claim substantially exceeded her debt. Second, she contended that the defendants failed to engage in meaningful communications with her during the bankruptcy and thus breached their duty to coordinate with the bankruptcy trustee to preserve the plaintiff's right to be compensated for her personal injury claim. (We refer to these first two theories collectively as the "communication failures.") Third, she contended that the defendants failed to timely file the underlying personal injury suit, forever barring recovery.

The defendants moved for summary judgment, arguing that (1) the plaintiff's malpractice claim should be confined to the failure to timely file suit because that was the only negligent act alleged in the amended complaint, (2) no harm resulted from that failure because the plaintiff gave up the right to pursue the underlying personal injury action when she failed to disclose it in the bankruptcy proceedings, and (3) the plaintiff was judicially estopped from asserting her personal injury claim by virtue of her failure to disclose it the bankruptcy. Given our disposition of the second issue, we need not consider the first;[5] we address the remaining two arguments in turn.

_____

[5] The defendants do not argue that they were entitled to summary judgment on the merits of the communication failures;

Effect of bankruptcy on subsequent malpractice claim.  The defendants argue that the plaintiff's malpractice claim is barred by the earlier bankruptcy and her failure to disclose the underlying personal injury suit.

We begin by noting that the malpractice claim was never part of the bankruptcy estate.  A legal malpractice claim is part of a bankruptcy estate if either (a) under State law, it has accrued as of the bankruptcy petition date, 11 U.S.C. § 541(a)(1) (2012); Butner v. United States, 440 U.S. 48 (1979), or (b) regardless of whether it has accrued under State law, it is "sufficiently rooted in the pre-bankruptcy past and so little entangled with the bankrupts' ability to make an unencumbered fresh start that it should be regarded as 'property'" of the estate.  Segal v. Rochelle, 382 U.S. 375, 380 (1966).  See generally In re de Hertogh, 412 B.R. 24, 28-29 (Bankr. D. Conn. 2009) (and cases collected therein).

Under Massachusetts law, a legal malpractice claim accrues "when a client 'knows or reasonably should know that he or she

---

their argument is instead that those theories of liability were not raised in the amended complaint and therefore need not have been considered by the motion judge.  Contrast Chiao Yun Ku v. Framingham, 53 Mass. App. Ct. 727, 731 (2002) ("At the summary judgment stage, a court will look beyond the complaint to the entire record").  Because we conclude that summary judgment should not have entered on the theory of liability contained in the amended complaint, it matters not that the additional theories of liability were not considered by the motion judge.

has sustained appreciable harm as a result of the lawyer's conduct.'" Lyons v. Nutt, 436 Mass. 244, 247 (2002), quoting from Williams v. Ely, 423 Mass. 467, 473 (1996).  Under this test, the plaintiff's legal malpractice claim based on the failure to timely file suit had not accrued by the date the bankruptcy petition was filed.  Indeed, it appears undisputed that the plaintiff did not know that the defendants had allowed the statute of limitations to lapse until she received the February 9, 2011 letter -- more than a year after the bankruptcy petition was filed.[6]  In addition, although the underlying personal injury claim has prepetition roots, the malpractice claim for failure to timely file it did not.  That claim did not come into being until the limitations period expired.[7]

_____

[6] We note also that there is nothing to indicate that the plaintiff knew or should have known, as of the bankruptcy filing date, that she had suffered appreciable harm from the alleged communications failures.

[7] As to the communications failures, although they have factual connection to the plaintiff's prebankruptcy past in that she retained the defendants prior to the bankruptcy petition date and at least some of the alleged communication failures occurred before the bankruptcy, no harm occurred until the filing of the petition in which the plaintiff (acting pro se and without the defendants' advice) did not disclose the personal injury claim.  "Because the filing of the bankruptcy caused the debtor harm . . . 'the claim cannot be deemed to have accrued prepetition.'"  In re Mateer, 559 B.R. 1, 7 (Bankr. D. Mass. 2016), quoting from In re Riccitelli, 320 B.R. 483, 492 (Bankr. D. Mass. 2005).

Because the plaintiff's malpractice claim was never part of the bankruptcy estate, the trustee never had standing to pursue it. In re Mateer, 559 B.R. 1, 5 (Bankr. D. Mass. 2016), quoting from In re Ross, 548 B.R. 632, 639 (Bankr. E.D.N.Y. 2016) ("The Chapter 7 trustee, standing in the debtor's shoes, can maintain only those actions that the debtor could have brought prior to or when she filed her bankruptcy petition"). The malpractice claim at all times belonged to the plaintiff, who has standing.

There remains, however, the question whether the malpractice claim had any value or, put another way, whether the plaintiff would be able to show causation or harm, given her failure to disclose the personal injury claim in the bankruptcy. We turn to that question now.

"A client in a malpractice action based on an allegation of attorney negligence must show that, but for the attorney's failure, the client probably would have been successful in the prosecution of the litigation giving rise to the malpractice claim." Frullo v. Landenberger, 61 Mass. App. Ct. 814, 818 (2004), quoting from Colucci v. Rosen, Goldberg, Slavet, Levenson & Wekstein, P.C., 25 Mass. App. Ct. 107, 113 (1987). See Bongiorno v. Liberty Mut. Ins. Co., 417 Mass. 396, 401 (1994). The defendants argue that the plaintiff, as a matter of law, was foreclosed from pursuing the underlying personal injury claim once she was discharged in bankruptcy without having

disclosed the claim.[8] It follows, they argue, that the plaintiff will not be able to prove that their later failure to file suit caused any harm.

These two propositions do not logically follow one from the other where, as here, the alleged value of the personal injury claim exceeded the value of the claims discharged in bankruptcy.[9] Although it is true that the personal injury claim (because it existed at the time of the bankruptcy petition) was an asset of the bankruptcy estate, it does not follow that the claim (whether disclosed or not) was extinguished by the bankruptcy discharge. As we further explain below, the personal injury claim continued to exist until the statute of limitations lapsed, and its value was not diminished by the bankruptcy. What the bankruptcy did change, however, was the identity of the

_____

[8] The plaintiff does not dispute that she had an obligation to disclose the underlying personal injury claim in the bankruptcy. She argues instead that (1) she operated in good faith and did not intend to hide anything from the bankruptcy trustee, as evidenced by her answers disclosing the existence of her injuries and her belief that she had the right to sue someone for them, (2) given her pro se status and her answers to the trustee's questioning, she sufficiently disclosed the claim, and (3) to the extent she failed to adequately disclose the claim, that failure was the result of the defendants' negligence. See Jernigan v. Giard, 398 Mass. 721, 723 (1986) ("[a]n attorney defending a malpractice action may not rely on the consequences of his own negligence to bar recovery against him").

[9] The summary judgment record showed that plaintiff's expert valued the personal injury suit far in excess of the approximately $32,000 discharged in bankruptcy.

parties with an interest in any recovery on the personal injury claim.

As soon as the plaintiff filed her bankruptcy petition, her personal injury claim became an asset of the bankruptcy estate, and the trustee was responsible for pursuing it for the benefit of the estate and its creditors. See 11 U.S.C. § 323(b) (2012) (trustee has capacity to sue and be sued). That interest did not terminate on the bankruptcy discharge; indeed, had the defendants filed suit on the plaintiff's behalf after the bankruptcy discharge, but before the statute of limitations had elapsed, the "usual remedy [would be] to substitute as the real party in interest the trustee of the bankruptcy estate in the place and stead of the former debtor." Rousseau v. Diemer, 24 F. Supp. 2d 137, 143 (D. Mass. 1998), quoting from Kohlbrenner vs. Victor Belata Belting Co., U.S. Dist. Ct., No. 94-CV-0915E(H) (W.D.N.Y. June 3, 1998). See Mass.R.Civ.P. 17(a), 461 Mass. 1401 (2011) ("[n]o action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest"). See Vidal v. Doral Bank Corp., 363 F. Supp. 2d 19, 22 (D.P.R. 2005); Barefield v. Hanover Ins. Co., 521 B.R. 805, 808-809 (Bankr. E.D. Mich. 2014). Thus, it was the running of the statute of

limitations, not the bankruptcy discharge, that extinguished the personal injury claim, stripping it of any potential value. Accordingly, the malpractice claim should not have been dismissed on the ground that the defendants' negligence in allowing the statute of limitations to run without filing suit, as a matter of law, could have caused no harm.

All that said, because the value of the malpractice claim (which was never an asset of the bankruptcy) is tied to the value of the underlying personal injury suit (which was), the trustee may have an interest in any recovery on the malpractice claim -- at least to the extent of the value of the claims discharged in bankruptcy. On remand, the judge and the parties should accordingly ensure that the trustee is notified of the existence of a potential interest in any recovery.[10]

Judicial estoppel. Finally, the defendants argue that the plaintiff's failure to disclose the personal injury suit judicially estops her now from pursuing the malpractice claim. We disagree. The summary judgment record, viewed as it must be in the light most favorable to the plaintiff, raised two material issues of fact that precluded summary judgment. First,

---

[10] We do not prescribe the mechanics by which the trustee's potential interest in any recovery should be protected. But because it is advisable that the trustee should be notified, the plaintiff is ordered to provide a copy of this opinion to the trustee and to the bankruptcy court within fourteen days of the date of its issuance.

the exchange between the trustee and the plaintiff is sufficiently open to interpretation that the question whether the plaintiff thought she had disclosed the existence of the personal injury claim should have been allowed to go the trier of fact. Second, the plaintiff's good faith in the bankruptcy proceedings was also sufficiently raised by the summary judgment record to be put to the trier of fact.

"[T]wo fundamental elements are widely recognized as comprising the core of a claim of judicial estoppel. First, the position being asserted in the litigation must be directly inconsistent, meaning mutually exclusive of, the position asserted in a prior proceeding. . . . Second, the party must have succeeded in convincing the court to accept its prior position." Otis v. Arbella Mut. Ins. Co., 443 Mass. 634, 640-641 (2005) (quotations omitted). "Notwithstanding that general articulation of the doctrine, there may arise certain instances where the party's prior position was asserted in good faith, and where the circumstances provide a legitimate reason -- other than sheer tactical gain -- for the subsequent change in that party's position." Id. at 642. The doctrine is equitable in nature and, even when decided in the context of summary judgment, is reviewed for abuse of discretion. Id. at 640. That said, like any other matter determined on summary judgment, the material facts must be undisputed. Mass.R.Civ.P. 56, 365

Mass. 826 (1974). "Where a party's state of mind or motive is in issue, summary judgment is disfavored." Maimaron v. Commonwealth, 449 Mass. 167, 177 (2007), quoting from Pinshaw v. Metropolitan Dist. Commn., 402 Mass. 687, 695 (1988).

Here, the judge erred when she concluded that the plaintiff's good faith was not material and that she therefore need not consider it. Moreover, for purposes of summary judgment, the judge was required to accept the plaintiff's assertions, made by way of affidavit, that she did not intend to hide the personal injury claim from the bankruptcy trustee, that she thought she had disclosed it when she told the trustee she had fallen, the location of the fall, and that she believed she "had" (at the time of disclosure) a right to sue someone for her injuries. In addition, we note that the plaintiff's answer "no" to the trustee's next question -- "aside from that, does anybody owe you any money?" (emphasis added) -- does not contradict or limit her previous disclosure because it sought information in addition to, not substitution of, her earlier response.

For these reasons, we reverse the judgment allowing the defendants' motion for summary judgment and dismissing the plaintiff's amended complaint and remand for further proceedings consistent with this opinion.

So ordered.